PAUL O. CARTER *v.* MARIE S. CARTER.
[Nos. 94, 95, October Term, 1928.]

*Decided January 31st, 1929.*

502

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Ward B. Coe* and *Edward L. Ward,* for the appellant.

*John Philip Hill,* for the appellee.

PARKE, J., delivered the opinion of the Court.

There are two appeals on this record. The first involves the custody of a minor child of the parties; and the second appeal presents the propriety of allowing to a former wife a counsel fee for legal services rendered in connection with the determination of the future custody of a minor child, after a decree of divorce *a vinculo matrimonii* had ended the marital relation between the parents of the infant and had awarded the custody of their child.

The original bill of complaint was filed on February 1st, 1926, in the Circuit Court of Baltimore City, by Paul O. Carter against Marie S. Carter, and sought an absolute divorce and the guardianship and custody of John Paul Carter, their infant son, who was then in his fifth year. The ground alleged was an abandonment for the statutory period. The master reported that the testimony established the facts entitling the plaintiff to a decree; and the parties filed an agreement relative to alimony and the custody and support of the child. The chancellor then passed a decree which absolutely divorced the plaintiff and defendant; which awarded the agreed specific sum in lieu of all temporary or permanent alimony; and which, conformably to their agreement, gave the guardianship of the child to the plaintiff; and awarded his custody so that it be equally divided in time between the parents; and imposed upon the father the obligation of paying the mother the sum of forty dollars a week for the maintenance and education of the child while in the custody of the mother.

On October 5th, 1926, the defendant filed a petition praying that the decree be revoked and annulled on the ground that it was collusively and fraudulently obtained; that the defendant be given an opportunity to appear and answer and

to submit her defense to the allegations of the bill of complaint; and that the defendant be awarded alimony and the guardianship and custody of the infant. The plaintiff answered, denying the material charges of the petition; and later the parties again agreed, subject to the approval of the chancellor, that the matter be submitted on the petition and answer; and that the decree be modified so as to allow the defendant a further sum of $1,500, and to make a different provision with respect to the rights of the parents in reference to the custody of the child. By its decree of April 26th, 1927, the court dismissed defendant's petition; awarded her $1,500 as agreed; and gave the guardianship and custody of the child to the father, with the right of the mother to see the child at his father's residence and to have the child in her custody from the first of June in each year, or from the close of the child's school term, if it should extend beyond the first day of June, until the first day of September; and, also, for one week during the Christmas holidays, and for another week during the Easter holidays, of each year, with the right of the father to see the child at the mother's residence. The father was to pay the expenses of transportation from his home to the mother's home in New York or elsewhere, provided they be not in excess of the cost of transportation between Washington and New York; and the sum of ten dollars a week to the mother while the child was with her under the provisions of the decree. The chancellor made all the provisions with respect to the custody and support of the child effective until the further order of the court, and expressly retained jurisdiction for that purpose. *McSherry v. McSherry*, 113 Md. 395, 400-403.

The question of the custody of the child was again presented to the chancellor by the petition of the plaintiff filed on December 6th, 1927. In this petition the father recited his compliance with the modified decree, and the mother's refusal, rendering it necessary for the father to institute habeas corpus proceedings in New York. While these proceedings were pending, the petition alleged that the mother had secretly removed the child from New York for the pur-

504

pose of taking him to Canada, but that, discovering her plan, the father had employed a detective, who had found the child, on September 20th, 1927, at Bridgeport, Connecticut, and who had there secured possession of the child and returned him to the father, who had him in his custody at the' time of the filing of his petition.

The object of the father's action was to obtain the exclusive guardianship and custody of the child. In addition to the defendant's noncompliance with the decree, the plaintiff averred that his wife's conduct since the decree of April 26th, 1927, made her unfit to have the minor, and that the plaintiff should have the sole custody of the child. The answer of the mother was a denial of all the accusations brought against her; an assertion of her rights under the decree, and a denial that it ought to be modified.

Voluminous testimony was taken by the parties; and the chancellor passed a decree on June 25th, 1928, in which he modified the decree of April 26th, 1927, so (a) that the custody and guardianship of the child be awarded to Marie S. Carter from June 26th, 1928, to October 1st, 1928; and, also, one week during Christmas holidays of 1928, and one week during Easter holidays of 1929, with the right of the father to visit the child while in the custody of the mother; (b) that the father pay the mother the sum of $25 for the week of June 26th, 1928, and thereafter at the rate of $100 a month from July 1st, 1928, for the support, education, and maintenance of the minor during the period or periods that the child is in the custody of the mother; (c) that the custody and guardianship of the infant shall be committed to the father from October 1st, 1928, to June 25th, 1929, with the exceptions of the periods of the Christmas and Easter holidays, allowing the mother the right to see the infant while in the custody of the father; (d) that the father should pay the cost of transportation between Washington and New York for the first two periods of the mother's custody and that the mother pay for the third trip, and (e) that the court retain jurisdiction of the infant "and that the provisions *herein-*

*after* (hereinbefore) shall remain in force until the further order of this court."

It will be observed that a part of the decree applies to a period which has passed and, at the present time, the decree is effective to the extent that it gives the guardianship and custody of the infant to the father, subject to an interval of one week during the Easter holidays in 1929, until June 25th, 1929, but the general declaration at the end of the decree that the specific provisions are to remain in force until the further order of the court would continue them indefinitely, and thus would give the "guardianship and custody" of the minor to his mother for slightly more than three months in the summer, a week at Christmas and a week at Easter, with the father paying the mother at the rate of $100 a month during those periods, and having the "guardianship and custody" during the remainder of the year.

It is the rule of the common law that parents have the natural right to the custody of their children, and that, as between the mother and father, the primary right to the custody of the children is in the father, since it is his duty to provide for his children's protection, maintenance, and education. So, if the parents separate or are divorced, and a dispute arises as to the custody, the right of the father ordinarily is superior to that of the mother, but this rule must yield to the paramount consideration of what will be for the best interest of the children and most conducive to their welfare; and the court will accordingly exercise its sound discretion and award the custody of the children according to the exigencies of the particular case, notwithstanding any agreement between the parents. *Boggs v. Boggs,* 138 Md. 422, 438, 439.

The child is now in its eighth year, and is not of such a tender age as to require a mother's ministration nor to make his separation from her prejudicial to his health. Moreover, the father has married again, and has a comfortable home, where the child is now receiving suitable care, nourishment, maintenance, attention, and education in favorable surroundings, with every indication of their continuance and

of his being reared in a manner suitable to his station in life. The father is able and desirous of providing a home, support, and education for the child, and there is every reason to believe the child's material welfare will be best promoted by his remaining in his father's custody. Nor is there any ground to believe that the moral and mental development of the son will not be fostered and guarded by the father to the child's advantage. To separate the child from the home life, discipline, and care of the father, even for brief periods during a year, would tend to divide the authority of each parent and render it necessary for the child to make difficult adjustments in his relations and loyalty to his parents. So far as the child's welfare is concerned, the court can find no ground to award his custody to the mother except to gratify her maternal love. The child's interest, however, is not to be sacrificed even for this motive. The welfare of the son is too grave a responsibility for the court, acting in his protection, to jeopardize by giving the custody of the child to one in whom the court can not wholly place its confidence nor be assured that its decree will be obeyed. In the present case, the effectiveness of the jurisdiction, which the court has retained over the child for his benefit, is rendered precarious by the residence of the father in Washington and of the mother in New York. Without either parent being within the reach of the processes of the court, it becomes all the more incumbent that the court should not place its trust where it has been abused.

In the present case, the mother, after requesting that the chancellor pass a decree in conformity with the formal and deliberate agreement of herself and the father, violated the decree embodying this agreement by refusing to return the child to the father at the close of the period which the child was to spend with her in New York. And, in order to defeat the mandate of the court, clandestinely removed the child out of the State of New York to Connecticut, so that, by compelling the husband to resort to proceedings to recover the child, she could defeat the decree of the Maryland court by having the court of another state assume jurisdiction, in

the hope that this plan would result in her obtaining custody of the child or a decree more favorable to her than that which was then in operation by virtue of a decree of a court of this sovereignty. It was only after this scheme had failed and she was in danger of being punished for contempt by a tribunal of the State of New York, and the husband had obtained the possession of the child in Connecticut through the pursuit of a detective, that the mother desisted. By her own admission, her contempt in disobeying the decree of the Circuit Court of Baltimore City was premeditated. 1 *Bishop on Criminal Law* (9th Ed.), sec. 469 (3); 2 *Id.* secs. 242 (5), 255, pp. 220-222, 270 (4); *Harrison v. Goodall,* Kay 310, 69 Eng. Rep. 131; *Wellesley v. Duke of Beaufort,* 2 Russ. & M. 639, 39 Eng. Rep. 538.

Under these circumstances she does not come into equity with clean hands; and the court is not justified in putting it again in her power to flaunt its decree and plot to nullify its efforts in behalf of the child. If the court is constrained thus to disappoint her maternal desires, it is only because of her own conduct. She has lost the right to the custody of her child, primarily by a divorce, which was due to her abandonment of her husband, without just cause; and now by premeditated disobedience of a decree to which she had voluntarily assented. The decree of the chancellor will be reversed, in order that one may be passed awarding the guardianship and custody of the child to the father, making a suitable provision for the mother to have reasonable access to the child upon such terms as may be prescribed by the chancellor, who shall retain jurisdiction over the child as the ward of the court.

(2) The remaining question is the propriety of the allowance to the wife of the sum of $300 to be paid her for the use of her solicitor for his services in the proceedings relative to the father's request for a modification of the decree with respect to the custody of the infant.

The power of a court of chancery to require the husband to pay the wife alimony and counsel fees rests fundamentally upon the existence of the marital relation. So, it has been

held that when the marriage is dissolved by divorce, the former husband is not liable for the unsuccessful professional services of an attorney who was employed by the divorced wife to secure an increase in the amount of her alimony. *Winchester v. Winchester,* 138 Md. 95, 98-100; *Crane v. Crane,* 128 Md. 214, 220. See *Poehlman v. Poehlman,* 130 Md. 695.

It would seem logically to follow that no counsel fee should be allowed to the mother because of her inability to pay her solicitor for his legal services in connection with the matter at bar. The allowance would have no relation to any proceedings with respect to the question of alimony or growing out of any obligation imposed upon the father under any order of court, but the sum of $300, granted by the chancellor, is simply an amount awarded to enable her to meet to that extent whatever may be the obligation of the mother to her own counsel. There can, therefore, be no implied obligation of the father to the mother arising out of their former married state, since an absolute divorce ends the ability to bind the husband for necessaries. *Supra; Stewart & Carey on Husband and Wife,* 137, 138; *Andey v. Mannus,* Gow, 10; *Winchester v. Winchester,* 138 Md. 95, 97, 98.

But while the relation of husband and wife is ended by an absolute divorce, that of parent and child continues, and the father remains primarily, and the mother secondarily, bound to support and maintain the infant. *Alvey v. Hartwig,* 106 Md. 254, 261-263; *Hood v. Hood,* 138 Md. 355, 358; *Thompson v. Dorsey,* 4 Md. Ch. 149, 151. It follows that, although there can be no liability in this case of the father to the mother for her counsel fees by reason of their former marital relation, yet, by reason of his parental obligation, the father may be liable, even to the mother, in the absence of any reason for imposing upon her his primary obligation, if, upon his default, she has supplied the minor with necessaries. This obligation is at law and not in equity. *Supra; and McCurley v. Stockbridge,* 62 Md. 422; 1 *Poe's Pl. & Pr.,* sec. 371; *In re Ganey,* 93 N. J. Eq. 389; *Alling v. Alling,* 52 N. J. Eq. 92.

If the forum in which the question is presented be ignored for the purpose of this discussion, the inquiry first presented is whether counsel fees are within the meaning of necessaries for an infant child. Without attempting to define in terms or by illustrative cases the meaning of so general and essentially relative a word as "necessaries," when used in connection with the responsibility of a parent to a child, it may be said that its scope is not confined to such obvious things as board, lodging, and education, but may, under proper circumstances, extend to the services of an attorney, if reasonable and necessary for the protection or enforcement of the property rights of the minor or his personal protection, liberty, or relief. 31 *C. J.* 1079, 1080. See 46 *C. J.* 1268; 44 *L. R. A.* (N. S.), 411-415; *Senseney v. Repp,* 94 Md. 77. Compare *Hill v. Childress,* 10 Yerg. (Tenn.), 514; *Smith v. Pontius,* 119 Wash. 211; *Greenhut v. Rosenstein,* 7 Daly (N. Y.), 164; *Owen v. Gunther,* 75 Ark. 37, 5 Ann. Cas., 130-132.

The right of recovery, however, is subject to the condition that the expenditure of money made or the services rendered were reasonable and necessary for the welfare of the infant, and especially, in the event of an action at law or in equity, is it required, before the father may be charged with the payment of attorney fees, that it must affirmatively appear that the proceeding begun or the defense interposed was reasonable and necessary for the temporal or personal welfare of the minor. *McCurley v. Stockbridge,* 62 Md. 422, 424-426.

In the instant case, the wife secured an allowance of a counsel fee of $300 upon the chancellor's overruling the demurrer of the father to the mother's petition, in which, without stating the amount of the fee she had incurred, she averred she was without financial means of paying any counsel fees arising from her effort to prevent the father from obtaining the exclusive custody of the child. If the difficulty of finding any ground for the chancellor to entertain this petition under the circumstances of this case be passed, there are two insuperable objections to the allowance of the fee to

510

the mother. In the first place, she has not shown that she has paid anything out on account of fees in the present matter, and, so, if any liability could exist on the part of the father, it would be to the solicitor, who was employed by the mother and who remains unpaid. And, finally, the mother's resistance to the petition of the father was not in the best interest of the infant but was in her own behalf and, therefore, at her own risk, and that of her solicitor, who can not receive compensation for services which were not necessaries for the benefit of the infant.

For the reasons assigned, the decrees of the chancellor with respect to both the custody of the infant and the allowance of the fee will have to be reversed.

> *Decree of June 25th, 1928, in No. 94 Appeals, reversed, with costs, and cause remanded for the passage of a decree in conformity with this opinion.*
>
> *Decree of June 26th, 1928, in No. 95 Appeals, reversed, with costs.*

ADKINS, J., dissents in No. 94.