## WILLIAMS *v.* WILLIAMS

[No. 144, September Term, 1957.]

*Decided February 28, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND and PRESCOTT, JJ.

*Preston P. Heck* and *J. Alex Johnson, Jr.,* for the appellant.

*Elroy G. Boyer* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

A husband appeals from a decree awarding his wife a divorce *a mensa* on the ground of desertion, and custody of an infant daughter to the wife. The husband being in the military service and having made an allotment for his wife and child, the court reserved for future determination the question of alimony and support. The only question presented is whether the evidence supports the finding of the court.

The parties were married March 10, 1956, at Chestertown,

where both their families reside. She was twenty-one years old, he was twenty-seven, and had served in the Air Force for some years as an air-borne radio operator, stationed at Dover, Delaware. His duties required that he be absent on test flights from time to time for periods of several weeks at a time. After a brief honeymoon they occupied a third floor apartment in Chestertown. There were some altercations concerning the way she kept the apartment. She became pregnant, and about August 1, they moved to the home of her parents, to be with her mother during his absences, and to avoid the necessity of climbing stairs in her condition, apparently on her doctor's advice. He asked her to return to the apartment, but she refused. She appears to have had crying spells and they quarrelled frequently over rather trivial matters. About August 25, he persuaded her mother to accompany him on a visit to the wife's doctor, who had been attending her because of her pregnancy but had not examined her for the past three weeks. The husband suggested that his wife ought to see a psychiatrist. According to the mother's account, she defended her daughter's emotional outbursts on the ground of her pregnancy, and fainted when the doctor suggested that her daughter be sent to Sheppard-Pratt Hospital. The news of this episode, which the wife described as an attempt to commit her, aroused her indignation and that of her father. The husband left the home and has never returned. The wife consulted another doctor, who assured her that her mental condition was normal, and attended her until the birth of her daughter on December 5, 1956. She filed suit for divorce on September 5, 1956, but this was subsequently dismissed.

During October and November, the husband and wife met a number of times outside the home, in drugstores or other places, but had no further marital relations. She testified that she offered to return to him after the child was born, but she did not think it wise that he return there on account of her father's attitude, nor did she think it wise to return to the apartment. He agreed to this arrangement. However, he wrote her a letter on November 27, 1956, which he gave to a mutual friend with instructions to give it to his wife

after the baby was born. The whole tenor of the letter was ·that he no longer loved her. He stated that he became sure of this in the course of their meetings. He stated that she had never loved him, and complained that she thought more of her mother than of him. He blamed her for saying "you didn't want to do anything about trying to get us back together before the baby is born", although he declared that "I knew it would be hard on you and I would not have let you do it". He said that for the baby's sake, "I couldn't let you know you were not going to get your way about my being there when our child is born", and that "I had to lie to you". He ended with the sentence: "We have broken our marriage vows so our marriage no longer exists. We are only tied by legal bonds now. Do with them as you like."

The testimony as to cessation of marital relations on August 25 is undisputed, and corroborated by the husband's departure from the home. True, this was not a final decision on the part of either. But the crucial question as to his intention to make the separation final is strongly supported by his letter. The wife testified that she fully intended to return to him after the child was born, and his letter seems to confirm this. He was not present at that event, and upon the subsequent delivery of the letter she naturally made no further efforts at reconciliation. He called her from the minister's home a few days later, but she refused to meet him. There is no evidence that he ever retracted the position taken in his letter, or made any further effort to communicate with her. Suit was filed on February 1, 1957. His testimony at the trial that he desired a reconciliation carries little weight. We cannot find on the record that the trial court was clearly wrong.

*Decree affirmed, with costs.*