## RHODERICK *v.* RHODERICK

[No. 168, September Term, 1960.]

*Decided March 16, 1961.*

*Motion for rehearing filed April 13, 1961, denied May 8, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and MARBURY, JJ.

*James B. Davis* and *Stanley R. Jacobs,* with whom was *Victor L. Crawford* on the brief, for the appellant.

*Wallace Dann,* with whom were *Howard Calvert Bregel* and *Calvert Ross Bregel* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

A husband appeals from the award of a divorce *a mensa* to his wife on the ground of desertion, challenging the sufficiency of the evidence and alleging that the court erred in excusing one of his witnesses and in awarding to the wife certain monies in joint bank accounts.

The parties were married in 1947 and had three children. The husband testified that from the very beginning he and his wife were "incompatible" and increasingly so. He complained of her "emotional outbreaks", culminating in an episode in December, 1958, when they quarreled because he did not bring home a Christmas tree. That was just "the straw that broke the camel's back." She testified and he admitted that they had no marital relations after August, 1958. She testified he told her he would never touch her again. In January he told her he did not love her any more, that he intended to leave, and that she had better see a lawyer. She arranged for them to see a marriage counselor, and they did. She also suggested that they see a psychiatrist, but he would not do so. The husband left on June 15, 1959, and never returned. The fact of his leaving was corroborated by other witnesses. He did not deny that his leaving was a final action on his part. In fact, he testified he "gave up on the marriage" when he ceased having marital relations, if not before. He did not consider his move as an "abandonment"; "I'll never abandon the children".

It seems perfectly clear that the husband left with the intention to sever the marriage, and his attempted justification by reason of her alleged "unnecessary emotional outbreaks" does not make out a case of constructive desertion on her part. *Bradshaw v. Bradshaw,* 189 Md. 322; *Mower v. Mower,* 209 Md. 413; *Williams v. Williams,* 215 Md. 569.

Nor do we find any fatal lack of corroboration of his desertion, despite her efforts to preserve the marriage. See *Sewell v. Sewell*, 218 Md. 63, *Zulauf v. Zulauf*, 218 Md. 99, and cases there cited. The appellant's contention seems to be not that he did not intend to desert but that the wife agreed to it. In short, the claim is that it was a voluntary separation. He relies upon *Matysek v. Matysek*, 212 Md. 44, but that case is distinguishable on the facts. There the wife left under circumstances supporting the chancellor's finding of a mutual agreement. On its facts the case of *Miller v. Miller*, 178 Md. 12, is more in point. Mere acquiescence in what she could not prevent is not enough to establish an agreement. See *Moran v. Moran*, 219 Md. 399, *Lewis v. Lewis*, 219 Md. 313, and *Courtney v. Courtney*, 213 Md. 600. The chancellor discounted the wife's testimony on the stand that she was willing to become reconciled. Nevertheless, the record seems to show without contradiction that she made repeated efforts to preserve the marriage prior to his departure.

The appellant complains that Mrs. Melby, the marriage counselor, whom he had summoned to prove his contention that the separation of the parties was voluntary, had been improperly excused by the court prior to trial. The reason assigned by the trial judge was that he was "inclined to treat" the statements made by the parties to the marriage counselor "in the nature of privileged communication."

While it is generally held that a trial judge has power to impose a limitation on the number of witnesses called and to control their examination to some extent, we think that without compelling reasons a judge is without authority to excuse a duly summoned witness before trial without the knowledge or consent of the party, or his counsel, summoning such witness at the ensuing trial and to require that such party make a proffer of the testimony the witness would have given if present in lieu of having the witness testify in person. But, be that as it may, it appears that in the instant case the appellant, by accepting the proffer suggested by the court, waived his right to insist that the witness be called in person.

The record shows that the husband had a separation agreement prepared but that the wife would not agree to it. A letter from Mrs. Melby, signed by her and by her superior, Mrs. Williams, informed the hearing examiner that "we worked with both Mr. and Mrs. Rhoderick and it was our understanding that they both decided that this marriage could not work." This letter was introduced by the appellant's counsel. His proffer was to rely on her testimony "only to the extent of the last sentence in her letter and that is that these parties could not get along together." The court said: "Well, now, you would expect Mrs. Melby to testify that it was her understanding and belief that this marriage would not work, that it was beyond her powers as a counselor and that it was her understanding and belief that these parties then were going to separate?" Counsel for the appellant replied in the affirmative. Counsel for the appellee was then asked: "Would you admit that if Mrs. Melby were here, she would so testify?" Counsel replied: "Yes * * * with one addition and that is that Mrs. Melby did suggest a psychiatrist." The court continued: "Now, Mr. Rogers, you also want to go further and ask Mrs. Melby to state, I presume, the basis for that belief and understanding that this marriage was on the rocks?" Mr. Rogers answered yes. The court said: "Well, what do you contend Mrs. Melby would say?" Counsel replied: "Well, from the information I have received, Mrs. Melby would testify that there was a complete and total incompatibility between this couple."

This colloquy makes it clear, we think, that the appellant had the benefit of the proffered testimony of the absent witness, for what it was worth. Of course, incompatibility is not a ground for divorce in this State, nor is mere acquiescence enough to establish a voluntary agreement to separate. Moreover, we think counsel agreed to accept the proffered testimony in lieu of insisting that the witness be called. He expressly disclaimed any wish to "ask her to violate a privileged communication." Nor did he renew his request that the witness be called in person after opposing counsel stipulated what she would testify to if present. Although he had a right to

insist that she be called in person, it was waived. We do not reach the question of privilege.

The final contention as to the equal division of certain joint bank accounts is also without merit. Code (1957), Art. 16, sec. 29, now empowers an equity court granting a divorce to determine ownership of personal property and apportion it accordingly. *Lopez v. Lopez,* 206 Md. 509, 516; *Brucker v. Benson,* 209 Md. 247, 250. The appellant contends that the court found that substantially all of the funds in the accounts came from the husband's salary and that the court erred in holding that the creation of the accounts was in the nature of a gift to the wife. But the court added: "All that I'm doing, really, as I understand it, is reaffirming the matter stipulated when we began these proceedings, except for the fact that I am throwing the $900 account [withdrawn by the wife] into the common pot." Such a stipulation is supported by the record, and we find it unnecessary to discuss the point further. As a matter of fact the wife claimed that the $900 was her own property and a wedding gift in which the husband had no interest. The husband can hardly complain that she was required to account for one-half of it.

*Decree affirmed, with costs.*