## RHODERICK *v.* RHODERICK

[Nos. 6, 185 and 361, September Term, 1969.]

*Decided March 31, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

*Francis N. Iglehart, Jr.* and *Walter R. Tabler,* with whom were *Brune, Robertson & Iglehart* on the brief, for appellant.

*Stanley R. Jacobs* for appellee.

BARNES, J., delivered the opinion of the Court.

In these three consolidated appeals from three separate orders of Judges Turnbull, Maguire and Proctor in the Circuit Court for Baltimore County, the appellant and petitioner below, Emma V. Rhoderick, contends that Judge Turnbull in the Order of October 7, 1968, and Judge Proctor in his order of December 2, 1969, did not allow sufficient increases in the amount of support for the three children (John, Richard and Mark) of Emma and her former husband, the appellee and respondent below, Richard L. Rhoderick (Richard). It is also contended that Judge Maguire erred in the order passed by him on June 17, 1969, declining to award Emma an

amount for "counsel fee and court costs to enable her to prosecute the appeals."

The facts are not in dispute in any substantial way. Emma was granted a divorce *a mensa et thoro* from the appellee Richard by a decree of the Circuit Court for Baltimore County in 1959 and was awarded custody of the three minor children. This decree was affirmed by this Court in *Rhoderick v. Rhoderick*, 224 Md. 478, 168 A. 2d 518 (1961). On March 15, 1968, Emma filed a Petition for Increase in Child Support based upon a $3,000 increase in the father's gross income and increases in the family living expenses resulting from inflation and certain unusual medical and dental expenses for the children. At the time this Petition was filed Richard was employed as an engineer with the Naval Ordnance Systems Command of the United States Department of the Navy with a civil service rating of GS—13, fifth step, with a base salary of $15,307 per annum. Richard, having moved to Fairfax County, Virginia in 1966, resisted the jurisdiction of the Circuit Court for Baltimore County, but, on July 2, 1968, Judge Jenifer ruled that the lower court had continuing jurisdiction in regard to all matters pertaining to the custody and support of the children, and he passed an order on July 8, 1968, denying Richard's motion and giving Richard 30 days within which to answer the Petition. Richard filed his answer in due course and there is no contention before us that the lower court did not have jurisdiction.

## 1.   (Appeal No. 6)

At the hearing before Judge Turnbull on the Petition of March 15, 1968, Emma submitted a statement showing general expenses of $178.00 a week. It was developed that in 1964 the lower court had increased the award for child support from $20.00 a week for each child to $27.50. Alimony of $15.00 a week had been left at the same figure. From the time of the last hearing in 1964, Richard had received an increase in salary of approximately $3,-

000 a year. Emma introduced into evidence an Employee's Statement of Earnings, Deductions and Leave issued by Richard's employer showing a gross pay of $646.40 for a two week period ($323.20 a week) and a net pay of $399.91 for the two week period (199.95 a week). Counsel for Emma offered to show that if Richard took all of the exemptions to which he was entitled, the amount withheld for taxes would be approximately $40.00 less each two week period. Counsel for Richard countered this by observing that Richard's Federal Return had been audited by the Internal Revenue Service practically every year since the divorce decree and that Richard owed the Government money each year on the present basis of deductions.[1] Emma testified in regard to the increased expenses for the children, the depletion of her savings to make ends meet and to the fact that her eldest son, John, would soon be ready to enter college. Richard filed a financial statement indicating a net monthly income of $867.00, and his monthly expenses (not including incidentals) of $871.15 a month, or a net deficit of $4.15 a month. There is an error in addition in the monthly expenses, which actually total $851.15 a month vs. $871.15, so that there was a surplus of $15.85 a month for incidentals. Richard testified that as a result of the original divorce litigation, the allowances made for counsel fees, and other expenses of suit he had been forced to borrow money and he had not yet been able to liquidate all of his indebtedness. In his list of monthly expenses he showed payments on account of his debts as follows: Household Finance—$50.00, Navy Credit Union—$55.34, Suburban Finance Co.—$21.81 and Montgomery Ward—$13.00. His statement of liabilities showed that he owed

1. Emma introduced into evidence as Complainant's Exhibit No. 7 Richard's copy of his Federal Income tax return for the calendar year 1967, to which was attached a "Report of Individual Income Tax Audit Changes" showing a Statutory Deficiency and Additional Tax Due of $213.31. Richard had shown a tax of $2,474.69 on his return and had paid this. The new amount of tax as a result of the audit was $2,688.00, the difference being the deficiency of $213.31.

the companies mentioned $1500.00, $1500.00, $130.00 and $165.00 respectively. His only asset was a 1967 Renault automobile having a listed value of $750.00. The general breakdown of Richard's monthly expenses were as follows: Living Expenses—Rent, food, clothing, etc. $288.-50, payment on account of loans $140.15, support payments $422.50, a total of $851.15. Richard swore that the statement was an accurate statement of his finances and this testimony was not impaired on cross-examination.

Judge Turnbull granted Emma an increase in child support of $2.50 a week for each child, a total increase of $7.50 a week or $390 a year, and passed an order giving effect to this increase on October 7, 1968. Emma perfected an appeal from this order. There was no Motion by Emma under Maryland Rule 564 b 2, requesting Judge Turnbull to state his reasons for his ruling, so that this helpful information is not before us. Richard filed a cross-appeal from the order of October 7, but this cross-appeal was later dismissed. Considering all of the evidence produced before Judge Turnbull, we cannot say that his grant of a $2.50 a week increase for each child's support was in error and we shall affirm the Order of October 7, 1968. See Maryland Rule 886 a. See also our decision in *Fuld v. Fuld,* 252 Md. 254, 256, 250 A. 2d 93, 95 (1969) in which Judge McWilliams for the Court in Note 1 set forth the prior decisions of the Court considering payments for support and maintenance of minor children of parties divorced *a vinculo matrimonii* and stated:

> "In our judgment no useful purpose will be served by setting forth herein an analytical recitation of the various factual situations presented by those cases and how we resolved them. It is enough, we think, to say that our decisions do not compel a conclusion that Judge Wolf's determination of the adequacy of $35 per week for the maintenance and support of Robert was clearly erroneous. *Levy v. Bernstein,* 237 Md. 552, 207 A. 2d 98 (1965)."

On December 4, 1968, Emma filed a Petition for Counsel Fee and Allowance of Court Costs, pursuant to Code (1957, 1969 Supp. to 1966 Repl. Vol.) Art. 16, § 5A, both for the hearing before Judge Turnbull and the prosecution of her appeal from the Order of October 7, 1968. This petition was opposed and the matter came before Judge Maguire for a hearing on June 17, 1969.

### 2.   (Appeal No. 185)

At the hearing on the Petition of December 4, 1968, it appeared that Richard had obtained a divorce *a vinculo matrimonii* from Emma in Virginia. The only testimony taken at this hearing was that of Richard, as an adverse witness for Emma. He, in effect, reintroduced his testimony taken at the previous hearing before Judge Turnbull that he had a net income of $399.91 every two weeks. He further testified that he had only taken *two* of the children and himself as exemptions for tax purposes, rather than all *three* children and himself, because he had "paid over two hundred and eighty-six dollars of income tax the last three years running, and I had to go out and borrow. I felt justified in trying to match my tax liability by deductions." Judge Maguire was of the opinion—relying in part on *Andrews v. Andrews*, 242 Md. 143, 218 A. 2d 194 (1966) and *Carter v. Carter*, 156 Md. 500, 144 A. 490 (1929)[2]—that the lower court should not determine the question of an allowance to Emma of counsel fees and court costs "until the matter has been disposed of by the Court of Appeals." It was his opinion that Emma would be entitled to such an allowance only if the legal services were necessary for the welfare of the chil-

---

2. The Andrews and Carter cases involved situations in which there were attempts by the mother to change the custody of children established by a prior decree, and there was no showing that the legal services involved were necessary for the benefit of the children. Both of these cases were decided prior to the passage of the Act of 1967, Chap. 488 (now Code (1957, 1969 Supp. to 1966 Repl. Vol.), Art. 16, § 5A) and to our construction of that statute in Fuld v. Fuld, both supra.

dren and that this determination turned on a finding of whether or not an appeal from Judge Turnbull's order was substantially justified. Judge Maguire believed this, in effect, would be passing upon the propriety of Judge Turnbull's award, a proper function of this Court rather than of another judge in the Circuit Court for Baltimore County, itself. In our opinion, in the light of Art. 16, § 5A and our construction of the statutory provision in *Fuld v. Fuld, supra,* Judge Maguire was in error in not passing upon the question of substantial justification for the appeal and, if the facts otherwise justified it, in not making an award to Emma of an amount for counsel fees and court costs, not only for this appeal but also for legal services in connection with the hearing before Judge Turnbull.

In *Price v. Price,* 232 Md. 379, 194 A. 2d 99 (1963), this Court held that under the Maryland cases a divorced mother, having custody of minor children, could not recover a counsel fee, not covered or contemplated by a separation agreement or the decree approving it, as a necessary and reasonable service to the minor children in an action at law. Judge (now Chief Judge) Hammond stated for the Court:

> "The fee sought in this case is claimed to be for necessary and reasonable services which were not covered or contemplated by the separation agreement or the decree which approved it. Under the authorities, we think the action to secure payment of the fee must be at law. If a contrary result is preferable, the Legislature may change the rule for the future."
> (232 Md. at 385, 194 A. 2d at 103).

The General Assembly apparently thought that a contrary result would indeed be preferable and it can be assumed that the passage of the Act of 1967, Chap. 488 was in response to this Court's suggestion in the *Price* case. In any event, § 5A provides:

"In all cases where a person makes an application for a decree or modification of a decree with respect to the custody, the amount of support or visitation rights concerning a child or children of the parties, or files any form of proceeding to recover arrearages of child support or otherwise to enforce such decree, the court, after considering the financial status of both parties, their respective needs and whether there was substantial justification for instituting or defending the proceeding, may make such award of costs and counsel fees to either party as shall be just and proper under all the circumstances."

In *Fuld* (apparently not cited to Judge Maguire by either counsel in the hearing before him), we indicated that the allowance of a counsel fee by the lower court in that case was insufficient and we increased it. We assumed that the lower court had correctly concluded that there was "substantial justification" for instituting the proceeding for an increase in the amount of support and maintenance for the minor child involved in that case. In our opinion, this is a desirable practice as it would enable us—as we did in the *Fuld* case—to consider the correctness of the allowance of counsel fees (and court costs) at the same time that we consider the merits of the case. There is, of course, quite a difference between the issue of whether or not there was "substantial justification" in bringing the proceeding, on the one hand, and the issue of whether or not the lower court was clearly in error in making the allowance, on the other. Admittedly, the issue is a sensitive one when the petition for the allowance of counsel fees and court costs is addressed to a judge in the lower court other than the judge passing upon the petition for additional child support, but, bearing in mind the distinction already mentioned, we are of the opinion that the required determination can be made without undue embarrassment. We

are further of the opinion that although we do not find that Judge Turnbull's order of October 7, 1968, was clearly in error, there was "substantial justification" for Emma to file the petition for the increase (she prevailed on this petition) and to take an appeal to this Court from that order. We shall, therefore, reverse Judge Maguire's order of July 5, 1969, and remand this aspect of the consolidated appeal to the lower court to make a proper allowance for counsel fees for legal services rendered in the proceedings before Judge Turnbull, before this Court and also in the proceedings, hereinafter mentioned, before Judge Proctor. In making the allowance the lower court will, in regular course, take further testimony in regard to the services rendered, their reasonable value and the usual economic considerations arising from the needs of Emma and Richard's ability to pay.

### 3.   (Appeal No. 361)

Counsel for Emma having learned at the hearing before Judge Maguire that Richard had received another increase in salary of $1,800 a year, effective November 1, 1968, and that federal employees in his classification of employment were scheduled for another salary increase of approximately $2,000, effective July 1, 1969, Emma filed a new Petition for Increase in Child Support on June 18, 1969. After an answer was filed by Richard, this new petition was heard by Judge Proctor on September 25, 1969. At the time of this hearing, the three sons were 18, 16 and 13 years of age, respectively, and John, the eldest son, had been accepted at St. Andrews Presbyterian College in Laurinburg, North Carolina. St. Andrews has an annual tuition cost of $3,000.00. Substantial testimony was taken at this hearing. Inasmuch as it is conceded in Emma's brief that "Judge Proctor's comprehensive written opinion can be accepted as the most complete statement of the financial facts of the Rhoderick family," we will quote substantial portions of that opinion, as representing the facts adduced at that hearing. Judge Proctor stated in his written opinion:

## "FINDINGS OF FACT"

"The controlling factors, so far as I am concerned, are what changes, if any, have occurred in the one year between September 25, 1968, and the present time, in Mrs. Rhoderick's income and expenses, and in Mr. Rhoderick's income and expenses.

"1. Mrs. Rhoderick's Income

"I find that Mrs. Rhoderick's gross income for the year prior to September 25, 1968, was approximately $2,920.00. Included in this figure was the sum of $742.09 interest income, of which $592.86 was derived from $12,000.00 in coupon bonds held for her by her father. Although she paid income taxes on this amount, in fact the income is not paid over to her by her father, but reinvested for her use and benefit. Also included in her gross taxable income was the sum of $780.00 paid her by the Defendant as alimony. From my consideration of the evidence, I find that there has been very little, if any, change in Plaintiff's income in the past year.

"2. Mrs. Rhoderick's Expenses

"So far as general expenses are concerned, there has been a net reduction of $14.00 a week. However, this reduction is more than off-set by the following: She now has to provide hospitalization insurance for herself at a cost of $3.00 a week; orthodontic expenses for Richard which totalled $925.00, and which are payable over a period of 130 weeks, or slightly more than $7.00 per week; college expenses of John Carl Rhoderick which for the first term aggregate of $1,-579.60, or $60.00 a week. The result is that if John's college expenses are included, aggregate expenses of Mrs. Rhoderick have increased per week in the net amount of approximately $56.00.

"3. Mr. Rhoderick's Income

"During the year prior to September 25, 1968, Mr. Rhoderick's take home pay every two weeks (after deducting Federal and Virginia withholding taxes, health insurance, life insurance, and FICA payments) was in the net amount of $434.69. At the present time his net take home pay every two weeks (with the same deductions) is $508.78. The result of the foregoing is that since the last hearing Mr. Rhoderick's bi-weekly income has increased in the amount of $74.09. Putting this on a monthly basis (as that is the basis on which Mr. Rhoderick computes his expenses), his increase is in the approximate amount of $156.00 per month.

"4. Mr. Rhoderick's Expenses

"Comparing the expense statement of Mr. Rhoderick submitted at the hearing before Judge Turnbull with his expense statement submitted at the hearing before me, I find the following differences:

"(a) So far as the miscellaneous items shown on the first statement are concerned, there has been a net reduction of $16.40 per month.

"(b) On the more recent statement there are several new items which did not appear on the first statement, viz: Laundry and cleaning $17.76; gasoline $28.40; automobile insurance $8.95; medicine $11.52; and children's visitation $19.50, all per month. The total of these new claims is $86.13 a month. However, I cannot allow a claim for both gasoline and transportation, and it is my judgment that $28.40 should be not only a sufficient amount for gas and oil, but also sufficient to pay the automobile insurance; so I have reduced the claimed insurance by $24.35. So far as Mr. Rhoderick's loan obligations are concerned, these have increased $43.88 per month.

"The total expenses claimed by Mr. Rhoderick at the time of the hearing before Judge Turnbull (exclusive of support and maintenance) was $428.65. The total claimed by him at the hearing before me (also exclusive of alimony and support payments) was $544.61, or a claimed increase of $115.96 a month. From this I have made the deduction referred to above of $24.35 a month, leaving a net monthly increase in expenses of $91.61. I cannot find that, other than the two items referred to above, any of Mr. Rhoderick's claimed expenses are exorbitant."

Judge Proctor reached the following conclusion:

"From the foregoing, I find that Mr. Rhoderick has a net increase in available funds of $64.00 a month. Converting this to a weekly net increase (on the basis of 4.2 weeks per month) it amounts to $15.00 per week.

"It is my judgment that Mrs. Rhoderick's expense schedule is not exorbitant, many of her expenses being no more than those claimed by Mr. Rhoderick for himself alone. Because of this, I find that the present allowance of $30.00 per week per child does not pay their fair share of the expenses. I will sign an Order increasing the weekly amount payable to each of the children by $2.50, or an aggregate increase of $7.50 per week."

The order of December 2, 1969, from which Emma also appealed to this Court, effectuated the aforegoing conclusion. It provided that the Order of May 11, 1964, relating to child support and the Order of February 1, 1965, relating to visitation should both remain in full force and effect and that Richard's Motion for Suppression of Alimony Payments to Emma was denied. Here again, we are of the opinion that we cannot say that

Judge Proctor's findings of fact are clearly erroneous or that his conclusion is clearly in error. Maryland Rule 886a and *Fuld v. Fuld, supra*.

Emma challenges Judge Proctor's order, as well as that of Judge Turnbull, with the observation that "Something clearly appears to be wrong when a father is only required to increase the amount of child support for the three teen-age sons by the amount of $780 per year when his own income has increased by $6,500 per year, and the mother is required constantly to deplete her savings and the principal of her own estate in order to make ends meet." This, however, is too simplistic an approach to the problem when the facts are analyzed and the ability of Richard to pay in his present financial situation is considered; and we cannot say, as we have indicated, that the findings and conclusions of either Judge Turnbull or Judge Proctor were clearly in error.

Emma argues that Judges Turnbull and Proctor regarded the petitions for increase of child support as a contest between Emma and Richard, rather than litigation brought for the sake of the children. Judge Turnbull did indeed take a dim view of the multiplicity of litigation over the years, indicating that it was, in his opinion, unfortunate for the welfare of the children. At one time in the proceedings he stated: "A plague on both your houses." It will be noted, however, that thereafter he did award Emma an increase in child support.

Judge Proctor in the first part of his written opinion characterized the child support litigation as a "continuing feud between the parties, which apparently like a babbling brook will run on forever * * *", but here again he made a comprehensive and careful analysis of the relevant financial facts and awarded Emma an increase in child support. In our opinion, these observations of the respective judges are not without some relevance to the situation before them, and in any event, did not influence them in their ultimate findings and conclusions in the respective matters.

Emma also contends that Judge Proctor erred in not requiring Richard to contribute to the college education of his eldest son.

Richard was not consulted by Emma in regard to the education of his eldest son John. John sought admission to the University of Maryland, where his father graduated, but Emma testified that he was not enrolled there because his grades were insufficient to make him eligible for admission.[3] She had tried to enroll John at St. Mary's College—a State school—but was unable to do this. She stated, "No State school in Maryland will take you with a C average." Richard admitted that he received a letter dated March 13, 1969, from counsel for Emma identifying the college, the amount of tuition and requesting a decision about making a contribution toward John's education. Richard testified that there "was nothing he could do about it" and when asked the reason, stated:

"Q. Why isn't there anything you can do about it? A. Because I don't have any money; I can't pay one cent towards this. I have people taking me to court now for money I owe them. If I don't pay Avis within two weeks I lose my job, because there was a car I rented on a Government card. I've had it; I mean it just doesn't matter. I can't do it. I'm against the wall now. I've been paying for these legal expenses for the past ten years, plus the money I have to give her; * * *"

The modern trend of the appellate decisions in the United States generally is to find that a college education is a necessity if the station in life of the infant justifies a college education and the father is financially able

---

3. Counsel for Richard stated at the hearing before Judge Proctor that the tuition at the University of Maryland was "something like $700.00 a semester * * * against $2,000.00 a semester to send the boy to St. Andrews; * * *."

368

to pay or contribute to the payment for such education. See *Peck v. Peck,* 272 Wis. 466, 76 N.W.2d 316, 56 A.L.R.2d 1202 (1956). See also the annotation entitled "Education as element in allowance for benefit of child in decree of divorce or separation," 56 A.L.R.2d 1207-1233, for a discussion of the cases generally and an article entitled "Support and Maintenance of Minors: A Father's Liability for Extraordinary Expenses," 27 Md. L. Rev. 72, 73-76.

This Court followed the modern trend of cases in *Smith v. Smith,* 227 Md. 355, 176 A. 2d 862 (1962), in which a father was required to contribute to the cost of the education of his 19 year old son at Morgan State College. In *Smith,* the father contended, *inter alia,* that he was under no obligation to contribute to his son's support while at college as it was apparent that the son was 19 years of age and "could become self-supporting." In rejecting this contention, Judge Sybert, for the Court, stated:

> "As to the second part of this contention, it assumes that when a minor reaches an employable age the parent is no longer obliged to support him. Nothing in the statutes indicates such a qualification of a parent's obligation to support his minor children, nor has our attention been called to any decisions so holding. Cf. *Roberts v. Roberts,* 160 Md. 513, 154 Atl. 95 (1931). As has been said many times, in the award of alimony and support money the financial circumstances of the parties, their station in life, and the expense of educating the children are among the factors to be considered. The record before us shows that a college education for the children has been afforded as an incident of the station in life of this family, and the father is financially able to pay the modest allowance made for the minor son while attending college, until he attains his majority, when the obliga-

tion will cease." (227 Md. at 361, 176 A. 2d at 865-66).

The *Smith* case also indicates that the lower court may properly pass an order for increased child support rather than to make a specific award for college expenses.

In our opinion — contrary to Emma's contention — Judge Proctor did consider and gave effect, in part, in the Order of December 4, 1969, to Emma's increased expenses resulting from John's college education. As pointed out in Judge Proctor's written opinion, *supra,* Emma's general expenses, apart from John's college expenses, had *decreased* by $14.00 a week since the time of the hearing before Judge Turnbull ($164.00 vs. $178.-00 a week). Judge Proctor, however, *increased* the child support payments by $7.50 a week. It can be reasonably assumed that he was, in effect, adding this $21.50 ($14.00 plus $7.50 a week) to the $30.00 a week ordered by Judge Turnbull, thus making a total of $51.50 as compared with the $56.00 a week stated by him to be Emma's total net increases a week including John's college expense. Thus, some part of the allocation most likely took into account John's college expense. In any event, the increase allowed appears to us to be all that Richard can reasonably be required to pay. See *Peck v. Peck, supra.* In our opinion, under all the facts and circumstances of this case, the award in this case gave sufficient consideration to the question of college expenses for John.

It must be apparent to both Emma and Richard by this time that it would be far better for each of them and most certainly for the children if, instead of resorts to litigation, they could, if at all possible, resolve questions of child support and visitation by agreement. Obviously, there is only a limited amount of money available from Richard's earnings and if substantial portions of these earnings are spent in litigation—with counsel fees properly allowable and amounts for court costs properly expended—there is substantially less available for the support and education of the three children. We hope indeed

that the parents will be able to subordinate their own differences to the welfare of the three children they both love.

> *Orders of October 7, 1968, and of December 2, 1969, affirmed; order of July 5, 1969, dismissing petition for allowance of a counsel fee and court costs reversed and case remanded for further proceedings in regard to that petition in accordance with this opinion, the costs to be paid by the appellee.*