ROBERT L. PETERMAN *v.* VALERIE S. PETERMAN

[No. 395, September Term, 1971.]

*Decided February 4, 1972.*

The cause was argued before ORTH, MOYLAN and GIL-BERT, JJ.

Submitted on brief by *Gary A. Goldstein* for appellant.

Argued by *Robert S. Rody* for appellee.

ORTH, J., delivered the opinion of the Court.

The question in this case is whether the chancellor below was correct in ordering ROBERT L. PETERMAN (appellant) to pay VALERIE S. PETERMAN (appellee) for the professional services of her solicitor in connection with the proceedings before the court. The amount of the counsel fee is not an issue.[1]

The power of a court of chancery to require the husband to pay the wife alimony and counsel fees rests fundamentally upon the existence of the marital relation.[2] So, when the marriage is dissolved by divorce, the former wife is not entitled to an allowance of counsel fees inci-

---

1. Appellant presents the question "Is appellant responsible for the payment of appellee's counsel fee incurred by appellee in resisting a Petition For Modification of Alimony and seeking on appellee's part an increase in alimony?" Appellee does not accept the question as presented. As posed by her the question is "Were the legal services rendered appellee by her counsel reasonable and necessary for the welfare of the children of the parties so as to justify the award of a counsel fee to appellee's counsel?"

2. And in any event the exercise of such power is proscribed "unless it shall appear from the evidence that the wife's income is insufficient to care for her needs." Code, Art. 16, § 5 (a). See *Quinn v. Quinn*, 11 Md. App. 638 for matters to be considered in determining the amount of the fee to be paid.

312

dent to further litigation against her husband, such as her seeking to secure an increase in the amount of alimony. It logically followed, reasoned the Court in *Carter v. Carter*, 156 Md. 500, that subsequent to an absolute divorce, no counsel fee should be allowed to the mother because of her inability to pay her solicitor for his legal services in proceedings relative to the father's request for a modification of the decree with respect to the custody of their infant child. "But", the Court continued, "while the relation of husband and wife is ended by an absolute divorce, that of parent and child continues, and the father remains primarily, and the mother secondarily, bound to support and maintain the infant." [3] *Id.*, at 508. Therefore, even though "there can be no liability of the father to the mother for her counsel fees by reason of their former marital relation, yet, by reason of his parental obligation, the father may be liable, even to the mother, in the absence of any reason for imposing upon her his primary obligation, if upon his default, she has supplied the minor with necessaries. This obligation is at law and not in equity." *Ibid.* "Necessaries", when used in connection with the responsibility of a parent to a child, "is not confined to such obvious things as board, lodging, and education, but may upon proper circumstances, extend to the services of an attorney, if reasonable and necessary for the protection or enforcement of the property rights of the minor or his personal protection, liberty, or relief. * * * The right of recovery, however, is subject to the condition that the expenditure of money made or the services rendered were reasonable and neces-

3. Under the common law the father has the obligation to support his child during its minority. *Rand v. Rand*, 13 Md. App. 574, quoting *Hull v. Hull*, 201 Md. 225 which referred to *Kriedo v. Kriedo*, 159 Md. 229. *Carter* was decided 31 January 1929. By ch. 561, Acts 1929, codified as Code, Art. 72A, § 1, the Legislature provided that both the father and mother were the joint natural guardians of a minor child and were equally charged with its care, nurture, welfare, and education. This section was amended by ch. 678, Acts 1951. The word "equally" was stricken and the parents were "jointly and severally" charged, not only with the care, nurture, welfare, and education of their minor child, but also with its "support."

sary for the welfare of the infant, and especially, in the event of an action at law or in equity, is it required, before the father may be charged with the payment of attorney fees, that it must affirmatively appear that the proceeding begun or the defense interposed was reasonable and necessary for the temporal or personal welfare of the minor." *Id.*, at 509.

In *Price v. Price*, 232 Md. 379, where there was a question of the correctness of an award to be paid by the father of a counsel fee to a lawyer who had performed services for a minor child some time after an absolute divorce had been granted, the Court reiterated, citing *Carter, McKay v. Paulson*, 211 Md. 90, *Frank v. Frank*, 203 Md. 361, and *Kriedo v. Kriedo, supra,* that if the divorced mother or another has furnished necessaries to an infant, the father may be liable to her or the supplier, and again pointed out that this liability of the father must be enforced at law. It suggested, at 385, that the Legislature might well want to change the rule. Then in *Andrews v. Andrews*, 242 Md. 143, decided 1 April 1966, the Court, relying on the *Carter* rule that the divorced wife is not entitled to an allowance of counsel fees with respect to the children unless the proceedings are reasonable and necessary for the children's benefit, held that the award there of a counsel fee to the divorced wife was improper.[4] It called attention to *Price.* Apparently the Legislature responded. In 1967 it enacted ch. 488, codified as Art. 16, § 5A, providing:

> "In all cases where a person makes an application for a decree or modification of a decree with respect to the custody, the amount of support or visitation rights concerning a child or children of the parties, or files any form of proceeding to recover arrearages of child support or otherwise to enforce such decree, the court, after considering the financial status of both

4. The chancellor, while not changing the basic custody of the father, adjusted and made definite the visitation periods to which a separation agreement looked.

parties, their respective needs and whether there was substantial justification for instituting or defending the proceeding, may make such award of costs and counsel fees to either party as shall be just and proper under all the circumstances."

This statute was construed in *McCally v. McCally,* 251 Md. 735. Observing that the Act gave the equity court power to award a counsel fee at any time in child custody and support cases, the Court found that by including as a consideration for the exercise of the power "whether there was substantial justification for instituting or defending the proceeding," the effect was to make the statutory test on that point the test of the cases such as *Carter* and *Andrews.* At 736-737.[5]

The statute was applied in *Fuld v. Fuld,* 252 Md. 254, where the Court found that the allowance of a counsel fee by the lower court was insufficient and increased it. In so doing it assumed that the lower court had correctly concluded that there was "substantial justification" for instituting the proceeding for an increase in the amount of support and maintenance for the minor child involved in the case.[6]

In *Rhoderick v. Rhoderick,* 257 Md. 354, the Court was of the opinion that the assumption in *Fuld* that the lower court had correctly concluded that there was "sub-

---

5. In *McCally* the lower court denied a change of custody from a father to a divorced mother "who had continued her illicit relations with her paramour, a married man who frequently spends nights in her apartment if he does not live there altogether," but allowed the wife's lawyer a fee, without stating his reasons for so doing. The decree granting the fee was reversed under the rule in *Carter* and *Andrews,* there being no indication of the factors requisite to impose liability on the father.

6. In *Fuld,* subsequent to an absolute divorce, the lower court increased the support for the child payable by the father from $30 to $35 a week. The mother appealed, alleging that the amount of support was "grossly insufficient" and that the allowance of a counsel fee of $25 was "grossly inadequate." The Court of Appeals held that the chancellor's determination of the adequacy of the amount for support of the child was not clearly erroneous. But it felt that the chancellor had not made "fitting obeisance to *justice* and *propriety* 'under all the circumstances', when he limited the amount of the counsel fee to $25." It increased the fee to $125. At 256-258.

stantial justification" for instituting the proceeding for an increase in the amount of support and maintenance for a minor child was "a desirable practice as it would enable us—as we did in the *Fuld* case—to consider the correctness of the allowance of counsel fees (and court costs) at the same time that we consider the merits of the case." At 361. But it was careful to point out that "[t]here is, of course, quite a difference between the issue of whether or not there was 'substantial justification' in bringing the proceeding, on the one hand, and the issue of whether or not the lower court was clearly in error in making the allowance, on the other." *Ibid.*[7]

In the light of Art. 16, § 5A and the construction and application of it by the Court of Appeals, we conclude that in equity, subsequent to a divorce *a vinculo matrimonii,* the chancellor may in his discretion make an award of costs and counsel fees not covered or contemplated by a separation agreement or the decree approving it to either party when (1) the proceeding is one involving the custody, support or visitation rights concern-

---

7. In *Rhoderick* the parents of a minor child had been divorced *a vinculo matrimonii.* One judge on a petition for an increase in the amount of support for the child payable by the father, increased it. Then the mother perfected an appeal therefrom. Then she filed a petition for counsel fee and court costs both for the hearing on the petition to increase the support and the prosecution of her appeal from the order thereon. On a hearing before another judge, he was of the opinion that he should not determine the question of an allowance to the mother of counsel fees and court costs "until the matter had been disposed of by the Court of Appeals." The Court of Appeals thought the lower court erred in not passing upon the question of substantial justification for the appeal and, if the facts otherwise justified it, in not making an award to the mother of an amount for counsel fees and court costs, not only for the appeal but also for legal services in connection with the first hearing. At 360. Although it did not find that the order increasing the support to be paid was clearly erroneous, it found there was "substantial justification" for the mother to file the petition for the increase and to take an appeal therefrom. Therefore it reversed the order refusing an allowance of counsel fees and court costs and remanded that aspect to the lower court to make a proper allowance for counsel fees and court costs, noting, "[i]n making the allowance the lower court will, in regular course, take further testimony in regard to the services rendered, their reasonable value and the usual economic considerations arising from the needs of [the mother] and [the father's] ability to pay." *Id.,* at 362.

ing a child of the parties, and (2) there was substantial justification for instituting or defending the proceeding. For there to be "substantial justification" it must affirmatively appear, under the rule in *Carter,* made applicable to the statute by the holding in *McCally,* that the proceeding begun or the defense interposed was reasonable and necessary for the welfare and benefit of the child.[8] We think it clear from the opinion in *Rhoderick* that "substantial justification" *vel non* is to be determined as a matter of law. Of course, when there is substantial justification for instituting or defending the proceeding, the making of the award by the court is upon consideration of the financial status of both parties and their respective needs. The making of the award in this context is tested by the clearly erroneous rule, Rule 1086.

## THE INSTANT CASE

On 13 October 1967 ROBERT L. PETERMAN, appellant, was divorced a vinculo matrimonii from VALERIE S. PETERMAN by decree of the Circuit Court of Baltimore City. It was ordered in the decree that (1) the Agreement between the parties dated 29 January 1966 "relative to custody, maintenance and support, alimony, property rights, attorney's fee, etc., be and the same is hereby approved and made a part of this Decree", (2) appellant pay the cost of the proceeding in accordance with the Agreement, and (3) "the Stipulation and Agreement between the parties dated the 2nd day of October, 1967, relative to alimony and support arrearages, be and the same is hereby approved and made a part of this Decree." Spelled out in the decree, as in accordance with the Agreement of 29 January 1966, was that appellee "shall have the guardianship and custody of LISA PET-

---

8. That is "reasonable and necessary for the temporal or personal welfare of the minor." *Carter v. Carter, supra,* at 509. The Court also expressed it another way in *Carter* when it said that "necessaries" may extend to services of an attorney "if reasonable and necessary for the protection or enforcement of the property rights of the minor or his personal protection, liberty or relief." *Ibid.*

ERMAN and LORI PETERMAN, the minor children of the parties in this proceeding, and accounting from the date of this Decree the said Plaintiff [appellant] shall pay directly to the Defendant [appellee] the sum of $100.-00 per month for each child for her support and maintenance; and the Plaintiff shall pay directly to the Defendant for her maintenance and support and as alimony, the sum of $200.00 per month, or 1/60th of his gross income; and the Plaintiff shall carry and pay for Blue Cross and Blue Shield insurance for said children and for the Defendant, and in addition shall pay all medical, surgical or dental bills not covered by said insurance, provided said bills do not exceed $150.00 in any calendar year; with the right to the Plaintiff to see said children at all times set out in said Agreement; all subject to the further Order of this Court in the premises; * * *."

On 30 August 1968 appellant filed a petition to determine custody of the children but according to a memorandum dated 26 February 1970 of the Probation and After-Case Division of Juvenile Services an agreeable visitation schedule had been arranged between appellant and appellee, appellant "now feels his children's best interests are being served by this arrangement," and he was "no longer pursuing the custody of his children."

On 9 April 1970 appellant filed another petition. Claiming numerous breaches of the agreement on numerous occasions by appellee, and citing the clause in the agreement whereby appellee agreed "to consult Husband with respect to all reasonably important decisions concerning the health, welfare and education of their said children * * *", he alleged that in January 1970 the two children, one then eight years of age and the other seven years of age, told him that they "were attending Religious Services in Catholicism at St. Williams Church" and that neither appellant nor appellee "at the time of the divorce, or prior thereto, were members of the Catholic Church." He asserted that she had not consulted him concerning the schooling or religious training which the children would receive and that he contacted her and indicated to

her "that he did not feel it was in the best interests of the children to become members of the Catholic Church, as this was not his faith nor [her] faith." It was further alleged in the petition that appellee was employed and had sufficient income for all her needs and that he was paying her 20% of his gross salary in addition to the support payments of $200 a month. He claimed the alimony paid was "oppressive and excessive." He prayed that the order of 13 October 1967 be modified to provide that appellee receive no further alimony, that she account for monies paid for support of the children and that she be held in contempt for "intentionally violating" the order of 13 October 1967. A show cause order was issued. On 22 April 1970 appellee filed a petition for the issuance of a contempt citation on the ground that appellant had paid no alimony after 1 March 1970, announced that he would pay no more, and had not complied with provisions of the agreement concerning statements of income received by him. A show cause order was issued on that petition. On 23 April appellee filed a demurrer and answer to appellant's petition and the same date filed a petition to modify the decree of divorce by increasing the amount of alimony and support to be paid by appellant. Appellant answered both petitions. The matter came on for a hearing on 14 January 1971 in the Circuit Court for Baltimore City before Cardin, J. On 2 April the Chancellor issued an order that the decree of 13 October 1967 be modified as follows:

1) that appellant pay appellee as alimony $200 a month plus an additional sum according to a formula spelled out;
2) that appellant pay appellee the sum of $2,-038.69 for alimony in arrears;
3) that appellant pay appellee's counsel the sum of $500 for services rendered her;
4) that the children "shall not receive Holy Communion or Confirmation in any Christian faith or religion without the consent of Robert L. Peterman or the consent of this Court";

5) that appellant pay all accrued costs taxable in the proceedings.

Appellant filed an appeal on 3 May 1971, Maryland Rule 1012 [9], and the same day appellee filed a cross-appeal. The cross-appeal was dismissed by her on 26 July 1971 and on 6 August she filed a petition for issuance of a contempt citation for failure to comply with certain provisions of the order of 2 April. Appellant answered the petition on 24 August. The record before us stops at that point.

The counsel fee here challenged [10] was not covered or contemplated by the separation agreement of 29 January 1966, the supplemental agreement of 2 October 1967, or the decree approving them. [11] Thus we look first to see if the proceedings for which the fee was awarded were among those specified in the statute. Relevant to this appeal the case before us involved a petition by appellant to which appellee interposed a defense and a petition by appellee to which appellant interposed a defense. Appellant alleged in his petition that appellee had breached her agreement to consult him "with respect to all reasonably important decisions concerning the health, welfare and education" of their children. He also alleged that she was using monies paid for the support of the children "for her own extravagances." He sought to have her account for all monies paid her under the order of 13 October 1967 for support of the children and to have her held in contempt for violating the order. Claiming that she was employed, he sought a modification of the order to provide that she receive no further alimony. Appellee alleged in her petition that she was in urgent need of ad-

---

9. May 2, 1971 was a Sunday. Rule 8.

10. Appellant does not contest the order that he pay the costs of the proceedings below. Appellee did not seek an allowance of counsel fees for professional services rendered her on this appeal.

11. Under the 1966 agreement appellant agreed to pay the costs of an action for a final divorce and a reasonable fee to appellee's attorney for his services therein. He also agreed to pay appellee's attorney $250 for services in connection with the agreement. Under the 1967 agreement appellant agreed to pay appellee's attorney $250 "as counsel fee for services rendered her in these proceedings."

ditional monies for the support of the children and for her support in order to maintain their children and herself in accordance with her station and position in life and with a decent and proper standard of living. She sought "a fair and reasonable sum" for the support of the children and her support. It is patent that the parts of the proceedings dealing with alimony were outside the statute. But we have no difficulty in concluding that other aspects of the case brought it within the ambit of the statute. We think that his allegations regarding the support of the children and regarding her breach of the agreement as to the children, and her allegations relating to the support of the children, made the case one "with respect to" the amount of support concerning children of the parties and "with respect to" the custody of the children. We hold the case was one covered by Art. 16, § 5A.

The case being one in which the lower court could award counsel fees, we look to see if there was substantial justification for appellee to interpose a defense to appellant's proceeding or to institute her proceeding. We find that there was substantial justification for her to interpose a defense to his petition and need look no further. In deciding the case the chancellor pointed out that appellee had been given custody of the children subject to the further order of the court. Under the rule of law early enunciated, consistently followed, and recently affirmed in this jurisdiction, the custody of them in her had been determined as best for the children's welfare, benefit and interest. *Sullivan v. Auslaender,* 12 Md. App. 1, 2-3. The chancellor below said that having been given custody of the children, appellee "has the right to bring them up in the manner that she thought proper, and if she wasn't doing a good job, it could always be brought to the attention of the court, and if the court thought that she wasn't raising the children properly, the children could have very well been taken away from the mother and placed in the custody of the father or some other individual or agency." Moreover, "custody should usually be changed only where the interest of the child requires

modification, where it appears advisable for the good of the child." *Winter v. Crowley,* 231 Md. 323, 331. The allegations of appellant that appellee was using money paid for their support on her own extravagances raised serious questions concerning the benefit and welfare of the children. Further he expressly claimed that her having the children attend religious services in Catholicism were not in their best interests. These allegations, both directly and indirectly as bearing on the propriety of the custody of the children in her, made reasonable and necessary for the welfare and benefit of the children that she interpose a defense. Therefore there was substantial justification for her defending the proceeding.

Appellant does not argue that a consideration of the financial status of both parties and their respective needs would make the award of counsel fees to the wife unjust and improper, and, in any event, on our review of the evidence we could not say that the chancellor was clearly erroneous in this respect in making the award. Therefore, because the proceeding before us was one in which an award of counsel fees is permitted by Art. 16, § 5A, and because there was substantial justification for appellee defending the proceeding, we hold that the chancellor was correct in the circumstances in ordering appellant to pay appellee for the professional services of her solicitor.

This holding ends our inquiry as the amount of the fee awarded is not now disputed.[12]

> *Order affirmed; appellant to pay costs.*

---

12. The chancellor stated: "I am inclined to feel that [appellee's] counsel is entitled to a fee in this case perhaps that ought to be paid by Mr. Peterman and part by Mrs. Peterman. I shall assess counsel fee of $500.00 against Mr. Peterman to pay counsel of record." It is apparent that appellant objected because in stating the above the chancellor said that with respect to the counsel fee he did not agree with appellant's counsel.