PRICE *v.* PRICE

[No. 3, September Term, 1963.]

*Decided October 7, 1963.*

The cause was argued before the full Court.

*Leonard S. Jacobson,* with whom was *Preston A. Pairo, Jr.,* on the brief, for the appellant.

Submitted on brief by *Eben F. Perkins* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

This appeal by a divorced father involves the correctness of awards to be paid by him (a) of a monthly sum to the divorced mother for the support of one of their minor children, and (b) of a counsel fee to a lawyer who had performed services for the child, each ordered some time after an absolute divorce had been granted.

Jessie E. Price was granted a divorce *a vinculo matrimonii* from James F. Price in June 1960. The decree approved an agreement between the parties relating to property rights, custody, maintenance and alimony, awarded the custody of the couple's four children to the wife and ordered the husband to pay one hundred dollars a month for each child "as provided for in said Agreement" (the agreement provided that the one hundred dollars for each child was to be paid "only during the periods that such child is living at home and being cared for by Jessie.") and to pay "all necessary medical, hospital and dental care for said children." The wife was awarded sixty-two dollars and fifty cents a month as alimony, and one hundred twenty dollars a month with which to pay taxes, insurance, and mortgage interest and principal on the dwelling, which had been owned by the entireties and in which the wife was to continue to live.

Richard, one of the children, required psychiatric treatment. Consideration was given to sending him to a school known as Wroxeter-on-the-Severn or to the Phipps Clinic for treatment. Finally, the treating psychiatrist recommended the Devereux School at Devon, in Pennsylvania. The court ordered that the

boy be sent there. The father balked at the high cost of this school and requested the right to send his son to the Anderson School at Stratsburg, New York. The court modified its order to permit either school to be availed of. Anderson School did not accept the boy, and the father appealed both the original order and the amended order to this Court, which advanced the appeal for an early hearing.

Thereafter, further examinations were made of Richard by three psychiatrists, who then suggested that he live with his aunt, Mrs. Audrey Toth, and receive regular treatment from a named psychiatrist. The boy began living with his aunt about April 1, 1962, and the appeals were dismissed. On December 5, 1962, the court formally awarded "temporary care and custody" of Richard to Audrey Toth and provided that the mother continue as guardian "except as to the temporary care and custody provided for in this Order," with reasonable rights of visitation.

The father deducted two hundred dollars from the check he sent his wife in December 1962—one hundred because the boy was not living with the mother and one hundred in partial recoupment of the full monthly instalments he had sent since the boy in fact began living with his aunt in April 1962.

The wife almost immediately filed a petition to require the husband to pay the original monthly amount, including the one hundred dollars attributable to Richard. After several hearings, Judge Harris ordered the father to pay forty dollars a month (of the original hundred) to the mother on the theory that she was still the guardian, maintained a room to which the boy came for weekends and provided clothing for him.

Judge Harris further found that counsel for the wife and the boy had rendered legal services over a period of seventeen months, which had consumed some ninety-two hours of effort on one hundred four separate days. The services had been in regard to (a) a modification of the father's rights of visitation, (b) the controversy as to the placing of the boy in a corrective school, including services in the trial court and the preparation of the appeal, (c) the later examination of Richard by the psychiatrists and the award of custody to the aunt, and (d) the controversy as to the reduction of maintenance for the boy.

Judge Harris, on the petition of the lawyer, fixed the fee at eighteen hundred fifty dollars, of which two hundred fifty were for services rendered the wife and sixteen hundred dollars were for services to the boy, and ordered the husband to pay the sixteen hundred dollars to the lawyer.

The parties are in accord that an equity court has the power and right to make and, from time to time, modify an order as to custody and maintenance of a child, which the facts currently justify, despite an agreement on the subject between the parents. Code (1957), Art. 16, Secs. 25, 28 and 66; *Kriedo v. Kriedo,* 159 Md. 229, 232; *Sause v. Sause,* 194 Md. 76, 80. The appellant contends here that the facts did not justify an award to the mother for the maintenance of her son while he was living with his aunt, and we agree. It was shown that after the boy began living with his aunt he visited his mother's home only at Thanksgiving and New Year's. The room, which the mother said was kept for him, had been shared by Richard and a brother and was used regularly by the brother. The mother had spent only some forty dollars for clothing after Richard left her home. The aunt provided food, clothing, medical expenses, money for recreation and spending money, and the father, her brother, had an agreement with her for reimbursement. The order appealed from would give the mother four hundred eighty dollars a year which she would not have to use for Richard, and we find it was not justified.

Maryland long has taken the view that the power of a court of chancery to require a husband to pay the fee of his wife's lawyer rests upon the existence of the marital relation and the consequent obligation of the husband to provide necessaries for his wife. When the relation ends by virtue of the granting of an absolute divorce, that obligation of the husband ends with it, the courts have reasoned and held. *Winchester v. Winchester,* 138 Md. 95, 97, and cases cited; *Carter v. Carter,* 156 Md. 500.

Although the relation of husband and wife is ended by an absolute divorce, that of parent and child continues and the father remains liable to support and maintain the infant. *Carter v. Carter, supra; Kriedo v. Kriedo, supra; McKay v. Paulson,* 211 Md. 90. If the divorced mother or another has furnished

necessaries to the infant, the father may be held liable to her or to the supplier. *McKay v. Paulson, Kriedo v. Kriedo, Carter v. Carter,* all cited above; *Frank v. Frank,* 203 Md. 361. Logically, it would seem that this obligation could be enforced in equity. Code (1957), Art. 16, Sec. 66, passed in 1920 as Ch. 573 of the Laws of that year, which has been said to be declaratory of the inherent power of courts of equity over minors, *Barnard v. Godfrey,* 157 Md. 264, gives equity original jurisdiction in cases of custody or guardianship and the power to direct who shall be charged with support and maintenance.[1]

Since equity may prospectively specify the person who is to provide necessaries and the amount, and the common law obligation of the father to pay for necessaries in addition to those covered or contemplated by the decree continues to exist, it would seem sensible to allow a chancellor to pass, after the event, on the necessity for and the reasonableness of the cost of goods or services provided for the infant and to direct the father to pay the amount found just and proper. The decisions of this Court, however, have held that this liability of the father must be enforced at law.

In *Carter v. Carter, supra,* the effort was made in equity to compel the husband to pay for legal services rendered to infants. The Court decided that the services were not in the best interests of the child but in behalf of the mother, and that her solicitor could not receive compensation for "services which were not necessaries for the benefit of the infant." In the course of the opinion it was said that the father may be liable to one, including his former wife, who has supplied the minor with necessaries and that "this obligation is at law and not in equity." It was said also that the term necessaries "may, under proper circumstances, extend to the services of an attorney, if reasonable and necessary for the protection or enforcement of the property rights of the minor or his personal protection, liberty or relief."

In *Kriedo v. Kriedo,* cited above, it was held that equity

---

1. Sec. 28 provides that agreements between parents shall not divest the court of this power, and Sec. 25 directs its exercise when appropriate in divorce cases.

could not direct a father to pay "extraordinary necessary expenses for the child not contemplated or intended to be covered by the award previously made, and which necessaries had been either paid for by the mother, or rendered to the child by others who have not yet been paid." The Court concluded: "we think the law is settled in this State that resort must be had to a court of law for the enforcement of such claims." Previously it had been said at p. 233:

> "Our conclusion, therefore, is that the father is primarily liable for the extraordinary necessary expenses to have been incurred for the benefit of his deceased minor child, which liability is to the persons rendering the service in cases where those rendering service have not been paid, and that the mother is entitled to reimbursement from the father in those cases in which payment has been made by her, but that upon the refusal of the father to pay, the remedy is by a suit at law wherein he is entitled to have a jury pass upon questions of fact, including the inquiry as to whether the services were rendered, whether they were necessary, and whether the charge was a reasonable and proper one."

In *Frank v. Frank,* 203 Md. 361, 369, we said: "The husband's liability, to pay for necessaries furnished his minor child, is to the supplier in an action at law, and not enforceable by application of the wife to the divorce court." Compare *Borchert v. Borchert,* 185 Md. 586; *Gregg v. Gregg,* 199 Md. 662; and *Zouck v. Zouck,* 204 Md. 285, 295.

The fee sought in this case is claimed to be for necessary and reasonable services which were not covered or contemplated by the separation agreement or the decree which approved it. Under the authorities, we think the action to secure payment of the fee must be at law. If a contrary result is preferable, the Legislature may change the rule for the future.

> *Orders reversed, costs to be paid*
> *by the appellant.*