## LEUBA v. LEUBA

[No. 624, September Term, 1966.]

*Decided November 7, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*James Michael Bailey* for appellant.

*Marvin Ellin,* with whom was *Leonard Passano Baker, Jr.* on the brief, for appellee.

PER CURIAM.

The appellant, Harald Richard Leuba (the husband) was married to the appellee, Lois Reed Leuba (the wife), on June 30, 1962. A child, Timothy Alan Leuba (Timothy), now four years of age, was born as a result of this marriage. Marital difficulties having arisen between the husband and wife, the wife at the husband's insistence and as a result of his threats (according to the wife's testimony) to take the position that his Mexican divorce from his former wife was invalid, signed a separation agreement on July 8, 1965, which, *inter alia,* provided that the wife should have custody of Timothy and would receive $175 a month for his support. The wife on August 12, 1965, filed suit in the Circuit Court No. 2 of Baltimore City for a divorce a vinculo matrimonii from the husband on the ground of adultery and later, on October 11, 1965, filed a proceeding to obtain a declaration that the separation agreement of July 8, 1965, was null and void. These two proceedings were consolidated. At the hearing before Judge Jones on March 15, 1966, the husband and wife reached an agreement, dictated into the record in open court. It was stipulated and agreed that the agreement of July 8, 1965, was null and void, that the existing division of property between the husband and wife should remain with certain immaterial exceptions, a payment of $650 would be made to the wife with an abandonment by her of any claim against the husband as a result of monies withdrawn by her from a credit union or from her own account, the wife would waive alimony, custody of Timothy would remain in the wife with visitation rights in the husband and, importantly for this appeal, that the husband would "make, through the Probation Department of Baltimore City, monthly support payments for the support of his son in the amount of $300, with the right to petition the court for a reduction *should his income decrease so that he is unable to make these payments."* (Emphasis supplied). There were also agreements in regard to a counsel fee for the wife's solicitor, and an agreement that the husband would be responsible for all hospital or unusual medical expenses for the care of his son. The merits of the divorce suit were to be referred to the Master.

Judge Jones wisely and properly examined both parties in open court in the presence of their respective counsel in regard

to their understanding of the stipulation and agreement, and both the husband and wife answered that they understood it.

At the time the agreement and stipulation was entered into in open court, the husband was earning a base salary of $1,395 a month from his principal employer with $322 a month for overtime work. He was also earning $125 a month as an associate professor at the Johns Hopkins University. He also at that time was a recipient, on a regular basis for three years, of a grant from that University amounting to $358 a month, but the husband knew at the time of the hearing that this grant would shortly expire.

The suit was referred to the Master who, after hearing, recommended that a divorce a vinculo matrimonii be granted and that the stipulation and agreement be approved. This recommendation was followed by the lower court and by its decree of April 14, 1966, the agreement and stipulation made in open court was "approved in its entirety". Thus, *inter alia,* in accordance with that agreement, the wife was given custody of Timothy and the payment of $300 for Timothy's support and maintenance was decreed, with the agreed rights of visitation, all subject to the further order of the court.

After the decree had been enrolled, the husband married, but no issue has been born as a result of this last marriage.

The husband made the $300 payments pursuant to the agreement and the decree of April 14, 1966, until August, 1966, when he unilaterally and without any order of court, reduced the payments to $175 a month, which latter amount he continued to pay until the time of the hearing of the wife's petition requiring the husband to show cause why he should not be cited for contempt for his failure to make the $300 payments in accordance with the decree. The wife also filed a petition for the issuance of a writ of *ne exeat* because of the husband's threat to leave the State of Maryland to avoid the $300 a month payment. The husband later filed a petition seeking modification of the decree of April 14, 1966, requiring the $300 a month payment.

At the hearing before Judge Cullen the testimony indicated that the husband was earning a gross income of $1,520 a month. There was also evidence that the support of Timothy at the

time required the expenditure of approximately $200 a month. The Chancellor found the husband in contempt for having failed to pay the $300 a month required by the decree of April 14, 1966, and after his commitment, the husband purged himself of the contempt by paying the amount in arrears. The Chancellor also refused to reduce the $300 monthly payments provided for in the agreement and in the decree of April 14, 1966, but denied the issuance of the writ of *ne exeat*. It is from the Chancellor's decree of October 21, 1966, effectuating these rulings, that the present appeal by the husband was timely taken.

It is clear to us that the Chancellor did not abuse his discretion in this matter and that his findings were not clearly erroneous.

We have held that in a situation involving the support of children, the Chancellor may revise the support allowances for the child notwithstanding the agreement of the parties in order to protect the welfare of the child. See *Price v. Price,* 232 Md. 379, 194 A. 2d 99 (1963). In the case at bar there is no question that the support payments are entirely adequate at this time for the support of the child and the wife does not urge or ask for any increase in the amount of agreed support. The only question presented to the Chancellor was whether or not the husband's income had decreased "so that he is unable to make these payments," as he had agreed in open court with full understanding and with his solicitor present. Notwithstanding the decrease in income of the husband by the loss of overtime payments, at the time of the hearing before Judge Cullen he had a gross income from his primary employer of $1,395 and in addition had $125 a month from Johns Hopkins University. There seems to be little question that the husband was still able to make the monthly payments of $300 for Timothy's support as provided in the stipulation and agreement, and the trial court did not abuse its discretion in so holding. His determination on the facts was obviously not clearly erroneous. See Maryland Rule 886 a.

> *Decree affirmed, the appellant to pay the costs.*