EDWARD FAINBERG *v.* BARBARA FAINBERG ROSEN

[No. 594, September Term, 1970.]

*Decided June 24, 1971.*

360

The cause was argued before MURPHY, C. J., and ORTH and MOYLAN, JJ.

*Leroy W. Preston,* with whom were *O'Connor & Preston* and *John Wheeler Glenn* on the brief, for appellant.

*Daniel F. Thomas,* with whom were *Bryan B. Haddaway* and *Bregel & Bregel, Chartered,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Appellant (husband) and appellee (wife) were divorced *a vinculo matrimonii* on July 23, 1963. Custody of the parties' three minor children was awarded to the wife. The decree incorporated an agreement between the parties which provided that the husband pay $100.00 per week for support of the three minor children "until said children shall respectively reach the age of twenty-one years, marry, die, or become self-supporting, whichever event shall first occur," it being further provided that "the amount of such payment shall be reduced by one-third for each child as to whom any such event shall have occurred."

On March 14, 1968 the wife filed a petition in the

equity court for an increase in child support payments. She claimed that the cost of supporting, maintaining, and educating the children had greatly increased; and in particular that it was "now necessary" to provide for the college education of the parties' eldest child Bonnie, who had theretofore attended C. W. Post College at an expense of $4,500.00 and who was then a second year student at George Washington University where the expenses approximated $3,000.00 per year. In addition to the claim for increased child support payments, the petition sought reimbursement for college expenses previously incurred and paid by the wife.

The matter was referred to a Master-Auditor who, after an extended evidentiary hearing, recommended to the court that it pass an order increasing the child support payments from $5,200 per year to $8,200 annually, effective July 30, 1967. Both parties filed exceptions to this report. A further evidentiary hearing was held before the court, at which the Master-Auditor's report was considered, together with supplemental, clarifying, and additional evidence. By order of modification for child support dated September 4, 1970, the Chancellor decreed that the husband pay the wife "retrospectively dated from September 1, 1966 [the date Bonnie entered college] and continuing until July 1, 1969 [the date Bonnie became twenty-one] the sum of * * * $140.00 per week for the support and maintenance of the said three minor children of the parties to help defray the increased cost of maintenance * * * and the additional college education expenses for * * * [Bonnie]." The Chancellor further ordered that, effective July 1, 1969, the child support payment for the two remaining minor children would be $100.00 per week. Supportive of its decree, the court rendered an opinion in which it concluded that it had the power to retroactively increase child support payments to a date preceding the filing of the petition for modification, so long as the requisite change in the circumstances was shown by the evidence. The court held further that the agreement between the parties with re-

spect to child support payments was not binding on it; that in view of the parties' station in life, a college education for Bonnie was a necessity; that the primary duty for supplying that education rested with the father; and that the court could properly pass an order for increased child support to make allowance for payment of college expenses.

On appeal, the husband claims that the Chancellor had no power to increase the level of child support payments retroactive to September 1, 1966, the date Bonnie entered college. He contends that the wife's petition for modification was not filed until March 4, 1968, and that in no event could the court increase support payments retrospectively to cover college expenses incurred prior to the date the petition for modification was filed.

Maryland Code, Article 16, Section 28 provides that an agreement between a husband and wife respecting "support, maintenance, property rights or personal rights * * * shall be valid, binding and enforceable to every intent and purpose." The Section further provides that where any such agreement affects "the care, custody, education or maintenance of any infant child or children of the parties," the court shall have the right to modify the agreement "in respect to such infants as to the court may seem proper, looking always to the best interest of such infants." In a similar vein, Section 66 of Article 16 provides that equity courts shall have power to direct who shall be charged with the support and maintenance of a child and authorizes the court, "from time to time thereafter [to] annul, vary or modify its decree or order in relation to such child or children." These statutes invest the equity court with power to modify any decree as to support and maintenance for a minor child which the facts would then justify, despite any agreement on the subject between the parties, as long as the best interests of the child so require. The cases so holding are legion. See, for example, *Wooddy v. Wooddy,* 258 Md. 224; *Tvardek v. Tvardek,* 257 Md. 88; *Bebermeyer v. Bebermeyer,* 241 Md. 72; *Pumphrey v. Pumphrey,* 11

Md. App. 287. We find nothing in the statutes or in the cases, however, which indicates that the equity court is empowered to modify a decree for child support by retroactively increasing the amounts due thereunder to cover a period of time prior to the date the petition for modification was filed.

In *Larkin v. Larkin,* 113 N.W.2d 75 (Minn.), it was held to be the general rule that a decree fixing the amount of the father's obligation for child support cannot be retroactively increased. In *Adair v. Superior Court,* 33 P. 2d 995 (Ariz.), it was held that an increase in payments for child support retroactively as of a date prior to the filing of the petition for modification was not permissible. The rationale underlying these cases appears clear, *viz.,* that the decree determining the amount of child support to be paid by the father was final for the period of time it covered, and that to permit retroactive increases would be tantamount to setting aside the decree after it had been performed. The rule in California is to the contrary, but appears based on statutory authority to retrospectively modify child support decrees. The cases are collected in a note at 6 A.L.R.2d 1277, entitled "Retrospective Modification of, or Refusal to Enforce, Decree for Alimony, Separate Maintenance, or Support." See particularly pages 1330-1333. It is also said to be the prevailing rule that a judicial decree obligating a father to pay a certain sum for the support of his child is the limit of his liability, except as it may be subsequently modified. 24 Am.Jur.2d *Divorce and Separation,* Section 835. The cases are collected in a note at 7 A.L.R.2d 491 entitled "Support Provisions of Judicial Decree or Order as Limit of Father's Liability for Expenses of Child," and are typified by the holding of the New York court in *Karminski v. Karminski,* 23 N.Y.S.2d 141, 143 that:

"* * * a decree of divorce fixing a sum payable for support of a child of the marriage is intended to limit the liability of the husband for

all expenses for the maintenance of said child, and that it is improper to disregard such limitations with respect to past expenditures, even though the amounts involved represent necessaries of a somewhat extraordinary nature. In so holding we do not relieve the father of the obligation to support his child. On the contrary, we uphold such obligation, but limit the amount of his liability to the sum fixed by the court's judgment until and unless such judgment is modified. Any other rule would invite constant squabbles over alleged extra expenditures for the support and maintenance of children of divorced parties, where the court had already fixed a sum for such support."

Some jurisdictions permit recovery against a father for expenses incurred on behalf of a child in excess of the amount he is obligated to pay by judicial decree or order. Maryland permits such recovery, not by retroactive modification of the support decree, but by an action at law. Thus, in *Kriedo v. Kriedo,* 159 Md. 229, an agreement between the husband and wife was incorporated into a divorce decree; it required the husband to pay $7.00 weekly for child support. Two years later, the wife filed a petition in the equity court seeking reimbursement for necessary medical and funeral expenses paid by her on behalf of the child. She contended that the $7.00 weekly fixed by the decree was insufficient, and not intended to cover such extraordinary expenses for necessaries. The court held that the father is under a common law obligation to support a minor child without regard to a decree divorcing the parents; and that the decree directing that he pay $7.00 weekly "in no way affected his common law obligation to support * * * [the child], but only prescribed the amount to be paid for its support, * * *." The court concluded that the husband's obligation could not be enforced in equity; that the obligation was one at law, stating: (p. 233)

> "Our conclusion, therefore, is that the father is primarily liable for the extraordinary necessary expenses shown to have been incurred for the benefit of his deceased minor child, which liability is to the persons rendering the service in cases where those rendering service have not been paid, and that the mother is entitled to reimbursement from the father in those cases in which payment has been made by her, but that upon the refusal of the father to pay, *the remedy is by a suit at law wherein he is entitled to have a jury pass upon questions of fact, including the inquiry as to whether the services were rendered, whether they were necessary, and whether the charge was a reasonable and proper one.*" (Emphasis supplied.)

In *Price v. Price,* 232 Md. 379, an equity case involving the father's responsibility to pay for necessary legal expenses incurred by his divorced wife on behalf of their child, alleged to be in excess of amounts provided for child support in the parties' divorce decree, the court said:

> "Since equity may prospectively specify the person who is to provide necessaries and the amount, and the common law obligation of the father to pay for necessaries in addition to those covered or contemplated by the decree continues to exist, it would seem sensible to allow a chancellor to pass, after the event, on the necessity for and the reasonableness of the cost of goods or services provided for the infant and to direct the father to pay the amount found just and proper. *The decisions of this Court, however, have held that this liability of the father must be enforced at law.*
>
> * * *
>
> "The fee sought in this case is claimed to be for necessary and reasonable services which were

not covered or contemplated by the separation agreement or the decree which approved it. Under the authorities, we think the action to secure payment of the fee must be at law. *If a contrary result is preferable, the Legislature may change the rule for the future.*" (Emphasis supplied.)

While the Legislature changed the rule in *Price* concerning the father's responsibility for payment of such necessary legal fees in specified equity proceedings (see Article 16, Section 5A, and *Rhoderick v. Rhoderick,* 257 Md. 354), it did not otherwise disturb the rationale underlying the *Kriedo* and *Price* cases. Indeed, in *Groner v. Davis,* 260 Md. 471, the court implicitly reaffirmed the principle espoused in those cases. There, the wife sued her divorced husband at law to recover $14,000 expended by her between 1966 and 1970 for the college education of their child. The divorce decree had incorporated an agreement between the parties requiring the husband to pay $175.00 monthly for support of two of the parties' minor children. The court found that the child's college education was a necessary, and that the wife could have timely sought modification of the decree to obtain an increase in child support payments to cover the college expenses. That she did not do so until after the college expenses were incurred and paid left her but one remedy —a suit at law to obtain reimbursement. But as to this remedy, which the wife did pursue, the court held that in view of the terms of the agreement between the parties, the wife could not, after the college expenses had been paid by her, obtain reimbursement for such payment from the husband.[1]

In concluding that he had power to retroactively increase child support payments to a date prior to the filing of the petition for modification, the Chancellor in

---

1. The agreement in the present case is, in some of its provisions, similar to the agreement in *Groner.* Whether the wife would be precluded from recovery of college expenses paid by her in an action at law is a question not before us and we do not decide it.

the present case relied upon *Winkel v. Winkel,* 178 Md. 489; *Bauman v. Bauman,* 239 Md. 379, and *Johnson v. Johnson,* 241 Md. 416. None of these cases support the Chancellor's conclusion. *Winkel* held that an equity court had inherent power to modify a decree for alimony by reducing, suspending, or cancelling unpaid, past due or accrued and accumulated arrearages. *Bauman* and *Johnson* extended the principle to child support payments, citing *Winkel* as authority. That arrearages can be cancelled is not authority for the proposition that retroactive increases and reimbursements may be ordered. To so hold is to overrule the basic holding in *Kriedo* and *Price.*

The wife relies upon *Wooddy v. Wooddy, supra,* as authority justifying retrospective increases in child support payments. In that case the court permitted modification of a decree for child support to permit an increase in child support payments for college expenses. It did not, as the wife contends, do so retroactively, but only prospectively to cover college-related expenses to be incurred in the future.

The husband in this case made all payments required of him under the 1963 decree up to the date of the filing of the petition for modification on March 14, 1968. If the husband is responsible for any necessaries incurred for his children during this period in excess of amounts provided for in the decree, it can only be recovered by an action at law under the principles established in *Kriedo* and *Price.* We conclude that the increase in child support payments from $100.00 to $140.00 per week dating from September of 1966, when Bonnie entered college, to March 14, 1968, when the petition for modification was filed, was erroneously granted.

We cannot, however, agree with the husband that the $40.00 weekly increase in child support from March 14, 1968 to July 1, 1969, the day Bonnie became twenty-one years of age, was excessive. In view of the financial status of the parties, and their station in life, we think the chancellor correctly determined that the reasonable ex-

penses of a college education for Bonnie was a necessary for which the father would be liable under the guidelines established in such cases as *Wooddy v. Wooddy, supra; Rhoderick v. Rhoderick, supra; Smith v. Smith,* 227 Md. 355. Of course, the principle that child support payments may be increased prospectively to cover additional expenses occasioned by attendance at college is settled. *See Wooddy v. Wooddy, supra.*

The principal considerations in making an award for the support of a child are its needs, in light of its station in life, and the financial circumstances of the child's father. *Wagshal v. Wagshal,* 249 Md. 143. In view of this, each case involving an award for child support necessarily must rest upon its own facts. *Wooddy v. Wooddy, supra.*

The Court of Appeals has reviewed in detail countless cases coming before it in which payments for the support and maintenance of minor children of divorced parties have been considered. *See Fuld v. Fuld,* 252 Md. 254, 256 (footnote 1). As in *Fuld,* we think no useful purpose would be served by setting forth a detailed statement of the evidence adduced before the Master-Auditor and before the Chancellor, or of setting out an analytical recitation of the various factual situations presented by prior cases and how the court resolved them. It is enough to say that we have carefully studied the record in view of the principle that an award of child support by a Chancellor will not be disturbed on appeal unless clearly erroneous. *See Wooddy v. Wooddy, supra; Pet v. Pet,* 238 Md. 492. In view of the husband's income and of the needs of the children, including Bonnie's college-related expenses incurred after the petition for modification was filed and up to her twenty-first birthday on July 1, 1969, we think the $40.00 weekly increase granted by the Chancellor for the three children from March 14, 1968 to July 1, 1969 was not clearly erroneous. In so concluding, we have considered the reasons advanced by the husband in support of his argument that the increase was excessive, particularly that urging that

370

the Chancellor did not relate the needs of the child in any particular year to the husband's income for that year; and that no relation was shown between the children's expenses and their actual needs. We have also been mindful of the husband's contention that the standard of living maintained by the wife for herself and her children is too high in relation to his ability to pay. While we think the wife's estimate of her children's needs is considerably greater than that actually required for their proper support, we believe, as indicated, that the award was not clearly erroneous. For like reasons, we conclude that the Chancellor did not abuse his discretion in increasing the support, after July 1, 1969, for the remaining two minor children to $100.00 weekly.[2]

The husband also contends that the court erred in awarding a fee of $750.00 to the Master-Auditor. He claims that because the Master-Auditor's report was grossly in error, it was necessary that the matter be heard in open court. As a consequence, the husband urges that no fee be allowed.

The record discloses that testimony was taken before the Master-Auditor over a three-day period and that he filed a written report concerning the net worth of the parties, their incomes, and the financial needs of the children. He also reviewed various court decisions. His recommendations were adopted in part by the court. The Master-Auditor's original bill of $1500.00 was reduced

2. The husband, a pharmacist, operates a drug store; it is incorporated, and he owns all its stock. The Chancellor found from the evidence that the corporation was worth $50,000; there was evidence that it was worth both less and more than that figure. The Chancellor found from the evidence that the husband's income had increased over the years to the point where, at the time of the court's opinion, it was approximately $26,000 per year. The husband concedes that this was a net income figure. There was evidence showing that the husband's gross income in the year 1969 was well in excess of $30,000 per year or almost triple his 1963 gross income. According to the husband's calculation, his net income after taxes in 1968 was $18,902. The wife's evidence indicated that his gross income for that year was $30,468, with a net of $23,982. By her calculations the husband's income increased in the years 1968 and 1969 by 109% and 147%, respectively, over his 1963 income.

by the court to $750.00. We cannot say, in the circumstances of this case, that the award was clearly erroneous.

Neither can we say that the Chancellor's award of a counsel fee of $1500.00 was clearly erroneous. Considering the financial status of the parties, the complexity of the case, both before the Master-Auditor and the court, and the preparation required of counsel, together with the fact that there was a substantial justification for the suit (see Section 5A of Article 16), we cannot find that the Chancellor abused his discretion.[3]

> *Case remanded for the passage of a modified decree in accordance with this opinion; costs to be paid by appellant.*

---

3. The husband also contended that the Chancellor erred in permitting one of the wife's attorneys, who participated in the trial of the case, to testify on her behalf as an expert witness with respect to the value of the husband's corporation. We think it obvious that the Chancellor erred in permitting the wife's counsel to so testify; however, the error was cured when the Chancellor ultimately determined that the witness was not an expert and, presumably, did not consider his testimony.