JOSEPH GIOVANNI BRACONE *v.* ANNA
IRENE BRACONE

[No. 85, September Term, 1972.]

*Decided October 25, 1972.*

The cause was argued before MORTON, ORTH and GIL-BERT, JJ.

*John A. Blondell* for appellant.

*William J. Smith,* with whom were *Bald, Smith & Lucke* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Joseph Giovanni Bracone, appellant, was divorced *a vinculo matrimonii* from Anna Irene Bracone, appellee, on July 9, 1969, by a decree of the Circuit Court for Anne Arundel County. The terms of the decree provided that the appellant was to pay the sum of $42.70 per week to the appellee as permanent alimony and the additional sum of $10.00 per week for each of three minor children. One of the children has since reached her majority and appellant no longer contributes to her support.

The record discloses that on February 26, 1971 the appellee filed a petition to cite the appellant for contempt of court because of appellant's failure to abide by the terms of the decree relative to alimony and support. This resulted in an order adjudging the appellant to be in contempt of court and sentencing him to incarceration for a period of 30 days which was suspended, conditioned upon payment of the accrued arrearage of $1487.50. On July 23, 1971, the appellee filed a second petition seeking the same relief. The appellant filed no answer to this petition as such, but did, on October 4, 1971, file a "Petition For Modification Of Decree Of Court" in which he prayed that the *"support payments * * * *"* be modified to be commensurate with his present income and living expenses." (Emphasis supplied). Albeit no request was made in the petition to reduce *alimony* payments, the Chancellor and the parties treated the petition as a re-

quest for modification of both support and alimony payments. So shall we.

At the conclusion of the hearing on the petition for modification and answer thereto, Judge E. Mackall Childs refused to alter the children's support payments but did reduce the weekly alimony payments from $42.70 to $25.00 with the proviso that "[t]he difference, amounting to seventeen dollars and seventy cents will be carried forward accumulatively and will be payable by the [appellant] to the [appellee] pursuant to further order of this court." The appellant was also ordered to pay to the appellee "one hundred fifty dollars ($150.00) toward her counsel fees and three hundred ten dollars ($310.00) representing one round trip air fare from California."

Appellant avers that the trial court abused its discretion when it (1) accumulated the suspended portion of the alimony payments subject to further order of the court, (2) awarded counsel fees and reimbursement of air fare, and (3) required the husband to show cause at a later date why the original decree should not be reinstated.

## I

We think the appellant's first and third contentions are interrelated and therefore shall treat them as one.

When appellant appeared before Judge Childs, he testified that prior to the hearing on the first contempt citation, he had deliberately reduced his income by quitting his job. This, he said, was the advice of his then counsel —not present counsel; the hypothesis being the less he earned, "the better impression it would be for me, in my payments." Appellant then admitted that Judge Melvin had "set me straight." After terminating his next employment, the appellant went into business in Ocean City, Maryland, but the business "flopped." At the time of the last hearing the appellant was hopeful that he would be reemployed by his former employer and in the same capacity that he had held prior to his quitting. Both appellant and appellee related to the court their respective

living expenses. The appellant's figures were "estimated" as was his stated income of $160.00 per week.

The trial judge said:

"[T]here has been a significant change in the financial circumstances of Mr. Bracone [appellant] and this time it was not as a result of his own calculation. Moreover, the court is of the opinion that Mrs. Bracone [appellee] is employable and no logical reason was advanced as to why she had not at least sought employment to supplement her income. The fact that she may have been wronged by her husband would not entitle her forever thereafter to be indolent."

Appellant relies strongly upon the recently decided case of *Crandall v. Crandall,* 14 Md. App. 476, 287 A. 2d 326 (1972). There, the husband had lost his employment because of a personnel cutback. However, he received retirement pay from the U. S. Navy and had also received severance allowances from his previous employer. He petitioned for modification of the decree requiring alimony payments. The trial court reduced the payments from $575.00 per month to $450.00 per month for a period of 26 weeks, subject to review at the end of that period so that the court could decide "whether the reduction in alimony payments * * * shall accrue to the benefit of the [wife] * * * at a later date or if said reduction shall be made absolutely."

In *Crandall,* in discussing the order for modification, we said, at 481:

"While the order appealed from does not expressly state that appellant will not be required to pay unto the appellee the suspended portion of alimony for the period of time that the appellant was actually unemployed, but actively seeking gainful employment, we think the rational inference that such is the case must prop-

erly be drawn therefrom. To hold otherwise would render the order of suspension merely illusory relief and an abuse of discretion."

*Crandall,* however, is factually inapposite, because there the husband never voluntarily took affirmative action to reduce his income, whereas in the instant case the appellant did do so. While it is true that the appellant candidly admitted the error of his ways and is now repentant, the fact remains that his financial plight is of his own creation. Judge Childs did not think appellant should profit from his misdeeds, nor do we.

The Chancellor said:

"* * * [S]ince the [appellant's] own deliberate acts were directly attributable to his leaving the job he now seeks to regain, the amount reduced will not be forgiven, but will be carried forward to be repaid in future installments after the defendant has been given an opportunity to establish himself financially."

It is patent that Judge Childs was not unaware of his authority to suspend all or a portion of the alimony. *Courson v. Courson,* 213 Md. 183, 129 A. 2d 917 (1957); *Crandall v. Crandall, supra.* Under the circumstances of this case, we do not believe the Chancellor abused his discretion or that the relief afforded to the appellant was merely illusory. On the contrary, the Chancellor tailored the relief to fit the fabric. He granted a temporary reduction of a portion of the alimony but, because of the appellant's prior misconduct, allowed the deferred portion of the alimony to accumulate, subject to the further order of the court. The Chancellor also required the appellant, at the expiration of one year, to show cause, if any he may have, why the original alimony order, *i.e.,* the payment of $42.70 per week, should not be reinstated. Appellant argues that in *Crandall* the trial court retained unto itself the right to make a determination at the end of 26 weeks whether or not the husband would be

required to pay all or a portion of the alimony that was suspended, while here the burden rests on the appellant to demonstrate why the original order should not be reinstated. We think the appellant seeks to draw a distinction without a difference. Whether the trial court *sua sponte* determines the question of reinstating the original order *vel non* or requires the appellant to show why it should not be reinstated is of no practical significance. The net effect of either situation would be similar as far as the type and source of information, as well as the facts necessary for the trial court's determination.

## II

Appellant next attacks the award of counsel fees and reimbursement to appellee of the round trip air fare from California. Sometime after the divorce *a vinculo* was granted, the appellee and her minor daughter removed themselves to the San Diego, California area where they took up residence with one of the appellee's married daughters. A minor son of the parties remained in Maryland where he is a student at Towson State College. The appellee has obligated herself for the payment of the tuition. When the second petition to cite appellant for contempt was set for hearing, the appellee flew to Maryland accompanied by her minor daughter. While here, appellee stayed with a second married daughter who resides in Anne Arundel County. Judge Childs declined to reimburse the appellee for the minor child's air fare on the ground that the child's presence was not required. He did, however, allow $150.00 for counsel fees and $310.00 for appellee's round trip air fare from California.

Md. Ann. Code art. 16, § 5A provides:

"In all cases where a person makes an application for a decree or modification of a decree with respect to the custody, the amount of support or visitation rights concerning a child or children of the parties, or files any form of

proceeding to recover arrearages of child support or otherwise to enforce such decree, the court, after considering the financial status of both parties, their respective needs and whether there was substantial justification for instituting or defending the proceeding, may make such award of costs and counsel fees to either party as shall be just and proper under all the circumstances."

We think it too obvious to require additional comment that the trial judge was empowered under the above quoted statute to award counsel fees to the wife's solicitor, that the award of $150.00 was "just and proper under all the circumstances," and that there was "substantial justification" for defending the proceedings. *Rhoderick v. Rhoderick,* 257 Md. 354, 263 A. 2d 512 (1967); *Peterman v. Peterman,* 14 Md. App. 310, 286 A. 2d 812 (1972).

There is no express provision in the above quoted statute for the award of travel expenses, unless such expenses are embraced within the meaning of the word "costs." Judge Childs concluded that had the legislature meant for "costs" to have the narrow interpretation of "court costs," the General Assembly could easily have inserted the word "court" before the word "costs." He equated "costs" as used in the statute with "suit money." *Rubin v. Rubin,* 233 Md. 118, 195 A. 2d 696 (1963). Although the Chancellor found no necessity for the appellee to be present at the modification hearing, he based the travel expense award on the necessity for her presence at the hearing scheduled on the second contempt petition, even though that hearing was never held because the appellant apparently made a payment of the arrearage a day or so before the trial date.

Judge Childs found that the wife's presence at the modification hearing was not necessary because the burden was on the appellant to show a change of circumstances. We do not agree with that reasoning in view of

the fact that the appellant sought a modification to either reduce alimony or child support, or both, and consequently the appellee had a vested interest in the support of her children which was threatened. Her presence may have been required to protect that interest. In any event, whether the trial judge relied on the contempt citation or on the modification, we do not think his award of travel expenses to be erroneous. The husband's non-compliance with the original alimony and support order led to the filing of the second contempt petition and a hearing date being set which resulted in the wife's presence in Annapolis.

The cases relied upon by the appellant to bolster his position that the wife was not entitled to the "suit money" are *Price v. Price,* 232 Md. 379, 194 A. 2d 99 (1963), and *Reese v. Mandel,* 224 Md. 121, 167 A. 2d 111 (1961). Both are inapposite. *Price* holds that a husband's obligation to pay his wife's attorney's fees rests upon the existence of the marital relationship and that when the marital relationship ends the husband's obligation ends with it. Here, however, the petition for modification was directed to "support." The Chancellor's "Memorandum of Decision" is silent as to his reasons for the award of the counsel fee, but we think it implicit in his memorandum that the counsel fee was awarded for the representation of the minor children under the provisions of Ch. 488 of the Acts of 1967, now codified as Art. 16, § 5A.

*Reese* arose from a zoning reclassification proceeding in Baltimore County. Appellant reads *Reese* as authority that "[t]he transportation costs, in the absence of a statute, are not allowable." Our perusal of *Reese* leads us to the conclusion that it offers no solace to the appellant. What *Reese* actually states is:

"It is almost universally held that the law in respect to costs existing at the time of the judgment that ends the controversy between the parties (in the absence of a saving clause or

clear indication in the new statute or rule of court to the contrary) prevails over the law as it existed at the time when the action was commenced \* \* \*."

Here, we have a "new statute," Art. 16, § 5A, and we agree with Judge Childs that "costs" in the instant case is the equivalent of "suit money." *Rubin v. Rubin, supra; Colburn v. Colburn,* 15 Md. App. 503, 292 A. 2d 121 (1972).

> *Order affirmed.*
> *Costs to be paid by appellant.*