## ALFRED ANTHONY MINNER *v.* JULIA ANN MINNER

[No. 94, September Term, 1973.]

*Decided October 23, 1973.*

The cause was argued before ORTH, C. J., and MORTON and MOYLAN, JJ.

*Harvey B. Steinberg*, with whom were *Miller, Miller & Steinberg* on the brief, for appellant.

*John R. Hansen* and *Paul H. Mannes* for appellee.

ORTH, C. J., delivered the opinion of the Court.

ALFRED ANTHONY MINNER (Husband) claims that the chancellor presiding in the Circuit Court for Montgomery County erred in awarding JULIA ANN MINNER (Wife) alimony and counsel fees.[1] He argues that an award to a wife of alimony and counsel fees is unconstitutional "as a denial of equal rights because of sex."

Husband's contention is bottomed on the impact of new Article 46 of the Declaration of Rights, Constitution of Maryland, on the law of this State.[2] Art. 46 provides: "Equality of rights under the law shall not be abridged or denied because of sex." He urges that the laws of Maryland concerning alimony and counsel fees in domestic causes are in contravention of this constitutional mandate in that they make no provision for award of alimony or counsel fees to a husband.

We assume for the purpose of decision, without deciding, that the law of Maryland does not permit a husband to obtain an award of alimony or counsel fees in domestic

---

1. On 3 March 1972 Husband filed a Bill of Complaint in the Circuit Court for Montgomery County against Wife for a divorce *a mensa et thoro* and custody of their three children. Wife filed a Cross-bill on 16 March for a divorce *a mensa et thoro*, custody of the children, alimony pendente lite and permanent, solicitor's fees and costs. The decree of divorce of 29 January 1973 dismissed Husband's Bill as to his prayer for divorce, granted a divorce *a mensa et thoro* to Wife, gave Wife custody of the children, awarded $225 per month as alimony to Wife, ordered that Husband pay $450 per month for support and maintenance of the children, $750 additional attorney's fees, and costs of the proceedings.

Husband's complaint on appeal does not go to the amount of the alimony and fees he was decreed to pay. He does not question the decree with regard to the propriety of the dismissal of his Bill of Complaint or of the grant of a divorce to Wife, or of the award of custody of the children to her, or of his obligation to pay for their support and maintenance.

2. Chapter 366, enacted at the session of the General Assembly of Maryland held in 1972 (three-fifths of all the members elected to each of the two houses concurring) proposed new Article 46 as an amendment to the Declaration of Rights. Section 2 of the Act provided that the amendment be submitted to the legal and qualified voters for their adoption or rejection at the next general election. The Act was approved 26 May 1972 and the amendment was ratified 7 November 1972.

causes, and that the right thereto is afforded only to a wife
or former wife.[3] We need not reach, however, the question

   **3.** Jurisdiction to hear and determine all causes of alimony, "in as full
and ample manner as such causes could be heard and determined by the
laws of England in the ecclesiastical courts there", is given by statute to the
courts of equity of this State. Code, Art. 16, § 2, first enacted by ch. 12, § 14,
Acts 1777. Causes for alimony were tried in the ecclesiastical court of
England, but now have been transferred to the divorce court of that
country. 3 Blackstone's *Commentaries on the Law,* ch. VII, p. 551 (Gavit
Edition). The ecclesiastical courts granted alimony only where there was a
divorce *a mensa* and the marital status subsisted. 1 Blackstone's
*Commentaries on the Law,* ch. XV, p. 189 (Gavit Edition); *Clayton v.
Clayton,* 231 Md. 74, 76. In 1841 the Legislature enacted ch. 262, a statute
specifically designed to enlarge the jurisdiction of the equity courts beyond
what was conferred by § 2 and to authorize the award of support beyond
the scope of historical alimony. *Clayton v. Clayton, supra,* at 76. Now
codified as § 3 of Art. 16, it reads: "In cases where a divorce is decreed,
alimony may be awarded." Construing § 3 in *Rand v. Rand,* 13 Md. App.
574, this Court, commenting that the section "is explicit in its terms", said,
at 580: "A trial judge *may* award alimony in any case wherein a divorce is
granted."
   As alimony may be decreed in any case where a divorce is granted, the
nature of alimony is material. Coming from Latin "alimonia" — sustenance
— it stems from the common law right of the wife to support by her
husband and means, therefore, the sustenance or support of the wife by her
divorced husband. Black's *Law Dictionary* (4th Edition, 1951). Blackstone,
in his *Commentaries,* Book 1, ch. XV, *supra,* said that it is "that allowance
made to a woman out ōf her husband's estate." In *Knabe v. Knabe,* 176 Md.
606, 612, alimony was defined as "a money allowance payable under judicial
decree by a husband at stated intervals to his wife, or former wife, during
their joint lives or until the remarriage of the wife, so long as they live
separately, for her support and maintenance." In *Quinn v. Quinn,* 11 Md.
App. 638, 643-644, we discussed alimony in terms of an allowance to the
wife in recognition of the husband's common law liability to support her,
concluding: "In other words, the sole object of the alimony award is to
provide an allowance to the wife for food, clothing, habitation, and other
necessities." In *Dougherty v. Dougherty,* 189 Md. 316, the Court of Appeals,
holding that a wife was entitled to alimony *pendente lite,* as well as "suit
money", including counsel fees, pending appeal, even though found to be at
fault, observed that "[t]he general rule is clear and undisputed, that the
wife, in these cases, is a privileged suitor * * *." At 320. Code, Art. 16, § 5
(a) proscribes the awarding of alimony or counsel fees "unless it shall
appear from the evidence that the wife's income is insufficient to care for
her needs."
   In finding that Art. 16, § 3 was specifically designed to enlarge the
jurisdiction of the equity court beyond what was conferred by § 2, and to
authorize the award of support beyond the scope of historical alimony,
*Clayton v. Clayton, supra,* at 76, the Court of Appeals read "alimony" not in
the technical sense of the word, but as commensurate with "support". *Id.,* at
77. One of the results of reading the word in that sense was to change, in
some aspects, the established concept of alimony. *Dackman v. Dackman,*
252 Md. 331. Although we do not now reach whether the rulings and
decisions lend themselves to a concept of alimony as sustenance payable by
a wife to a husband or whether there was authority for such construction
under the laws of England in the ecclesiastical court there, see 66 A.L.R.2d
880, Annotation, *Husband's right to alimony, maintenance, suit money, or
attorney's fees.*

whether Art. 46 of the Declaration of Rights renders unconstitutional the statutes of this State concerned with alimony and the award of counsel fees to a wife.[4]

The transcript of the proceedings reflects that when the chancellor announced the award of alimony and counsel fees, Husband's solicitor requested that the record show that the award was pursuant to Art. 16, § 5 because "I believe there is a constitutional issue." The chancellor said:

> "I will add to the opinion the fact, Mr. Steinberg, that alimony and counsel fees are being awarded to the wife in accordance with the statutory provisions of the Annotated Code of Maryland, more specifically, in this case, I believe Article 16, Section 5 of the Annotated Code of Maryland, and I would point out as part of the opinion that you have raised the question of whether as a result of the constitutional amendment, alimony and attorney's fees can any longer be awarded to the wife, whether she can be a favored suitor. You question whether it is invidious discrimination because there is no concomitant right of the husband to ask for alimony from the wife if the facts in a particular case justified it.
>
> My answer to that, Mr. Steinberg, is simply that you may have a point, but the point will be reached when that case is presented which should justify the Court in awarding alimony to a husband, and that the remedy for any discrimination if indeed it exists, would be to award alimony to a husband if a case required it, but we are not going to throw out the baby with the bath water and throw out the right of a wife to obtain alimony merely because

---

4. Compare Code, Art. 16, § 5A, dealing with award of costs and counsel fees in proceedings relating to child support, custody, visitation, arrearages, and the enforcement of decrees pertaining thereto. In such proceedings the statute provides that the court consider the financial status of both parties whose children are involved and the respective needs of both parties in making an award of costs and counsel fees. See *Fainberg v. Rosen,* 12 Md. App. 359.

the legislature has not given equal right to the husband. I am not called upon in this case to decide whether the husband in this State has a right to alimony, but I think in a proper case, if the Court feels he does, the Court can award it and it is not necessary to hold this portion of the statute unconstitutional in order to achieve equality." [5]

We observed in *Wilkins v. State*, 16 Md. App. 587, 598 that "the best teaching of judicial experience 'admonishes us not to entertain constitutional questions in advance of the strictest necessity.' *Parker v. County of Los Angeles*, 338 U. S. 327, 333 (1949); *Poe v. Ullman*, 367 U. S. 497, 501; *Vuitch v. State* [10 Md. App. 389] at 397." We see no such necessity here. We are in accord with the two rules which the Supreme Court has stated it feels bound to follow in its consideration of the constitutionality of a statute: "one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Liverpool, New York & Philadelphia S.S. Co. v. Commissioners of Emigration*, 113 U. S. 33, 39. In *United States v. Raines*, 362 U. S. 17, 21, the Court said that "[k]indred to these rules is the rule that one will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional."

The award of counsel fees and alimony to Wife was fully in accord with the laws of this State, and particularly the applicable provisions of Code, Art. 16. The court hearing and determining the cause for alimony had jurisdiction to do so, § 2; the alimony was awarded in a case where a divorce was decreed, § 3; the alimony and counsel fees were awarded upon evidence that Wife's income was insufficient to care for

---

**5.** We note that the matter of the constitutionality of the law was not raised by demurrer or answer or by motion to strike the prayers of the wife requesting alimony and counsel fees. See Maryland Rules 345, 371 and 372.

her needs, § 5. We do not so construe the provisions of Art. 46 of the Declaration of Rights as to abridge or deny a wife the right to be awarded alimony and counsel fees because a husband may have no right to such award. An obligation, not a right, of Husband is here involved. The obligation of Husband to pay alimony and counsel fees as decreed by the court in the exercise of its clear authority is not vitiated by the constitutional mandate. It may be that if a husband seeks and is denied sustenance and counsel fees upon proof of circumstances such as would entitle a wife to alimony and counsel fees, he would then have standing to invoke the dictates of Art. 46. But that situation is not in this case existent. The application of the statutes is constitutional as to Husband and he will not be heard to attack them on the ground that impliedly they might be taken as applying to other persons or other situations in which their application might be unconstitutional. *United States v. Raines, supra,* at 21. See *Heath v. State,* 198 Md. 455; *Hughes v. State,* 14 Md. App. 497; *Lashley v. State,* 10 Md. App. 136; *Vuitch v. State, supra.*

We do not believe that *Frontiero v. Richardson,* 411 U. S. 677, decided 14 May 1973, compels a contrary view. The statutes there attacked provided that spouses of male members of the uniformed services are dependents for purposes of obtaining increased quarters allowances and medical and dental benefits, but that spouses of female members are not dependents unless they are in fact dependent for over one-half of their support. 37 U.S.C. §§ 401, 403 and 10 U.S.C. §§ 1072, 1076. A married Air Force officer sought increased benefits for her husband as a dependent, and her application was denied for failure to satisfy the statutory dependency standard. She and her husband brought suit in the United States District Court, contending that the statutes deprived servicewomen of due process. From that court's adverse ruling, they took a direct appeal. The Government conceded that the differential treatment accorded men and women under the statutes served no purpose other than mere "administrative convenience." *Id.,* at 688. The judgment of the Supreme

Court was that the challenged statutes constituted an unconstitutional discrimination against servicewomen in violation of the Due Process Clause of the Fifth Amendment. Unlike the case before us, the ones denied the equal right to receive benefits attacked the statutes. Thus, the Court had the constitutional issue squarely before it and met it. A majority of the Court concurred in the judgment but not in the reasons for reaching it. Mr. Justice Brennan announced the judgment of the Court and delivered an opinion in which Mr. Justice Douglas, Mr. Justice White, and Mr. Justice Marshall joined.[6] Mr. Justice Stewart filed a statement concurring in the judgment. Mr. Justice Powell concurred in the judgment and filed an opinion in which the Chief Justice and Mr. Justice Blackmun joined. Mr. Justice Rehnquist filed a dissenting statement. Neither the Brennan opinion nor the Powell opinion represents a majority of the Court.

The opinion of Mr. Justice Brennan, at 682, agreed with the claim that classifications based upon sex are inherently suspect and must therefore be subjected to close judicial scrutiny, finding at least implicit support in *Reed v. Reed*, 404 U. S. 71. The opinion of Mr. Justice Powell expressly repudiated this view and thought it "unnecessary for the Court in this case to characterize sex as a suspect classification, with all the far-reaching implications of such a holding." 411 U. S. at 691-692. He believed the case should be decided on the authority of *Reed* and any expansion of its rationale be reserved for the future. He found another compelling reason for defining a general categorizing of sex classifications as invoking the strictest test of judicial

---

**6.** The precise holding of the Brennan opinion was: "We therefore conclude that, by according differential treatment to male and female members of the uniformed services for the sole purpose of achieving administrative convenience, the challenged statutes violate the Due Process Clause of the Fifth Amendment insofar as they require a female member to prove the dependency of her husband." A note to the opinion made clear that the conclusion "in no wise invalidates the statutory schemes [to provide fringe benefits in order to establish a compensation pattern which would attract career personnel through re-enlistment] except insofar as they require a female member to prove the dependency of her spouse." Note 25 at 691.

scrutiny. He pointed out that if the Equal Rights Amendment to the Constitution of the United States is adopted it will resolve the substance of this precise question. Maryland, as indicated, has already added such an amendment to its constitution. We shall apply it in a case properly invoking it.

*Decree of 29 January 1973 affirmed; appellant to pay costs.*