FREDERICK HOFMANN *v.* JOAN P. HOFMANN

[No. 338, September Term, 1981.]

*Decided December 4, 1981.*

The cause was argued before GILBERT, C. J., and COUCH and BISHOP, JJ.

*Paul E. Rosenberg* for appellant.

*James E. Kenkel* for appellee.

GILBERT, C. J., delivered the opinion of the Court.

The appellant here seems to believe that this is the Day of the Condore.[1] He appears to have read *Condore*[2] as creating a crypt into which all statutes enforcing common laws that favor one sex over the other are to be interred.

Appellant asserts that *Condore* killed common law alimony, and he invites us to conduct the funeral. We decline the invitation to perform that pastoral task.

Before we enter upon a discussion of the issue, it is advisable to set the scenario from which this appeal has arisen.

Appellant characterizes, with some justification, the relationship between the litigants as a "continuous state of war." To understand why that characterization is warranted, one must wade through volumes of pleadings, interrogatories, exceptions, motions, depositions, and testimony, all designed to end both matrimony and alimony. The severance of the bond of matrimony ended only a battle. The "war" then shifted to a "second front."

The record discloses that the litigants, Frederick Hofmann, appellant and Joan P. Hofmann, appellee, were married in Topeka, Kansas, on December 28, 1957. Three children were born of that union, one of whom is still a minor and an integral part of the instant skirmish.

In 1977, the appellee filed a bill of complaint in the Circuit Court for Prince George's County, in which she sought separate maintenance, child support, and attorney's fees from the appellant. The bill alleged that the appellant had, "without just cause or reason" deserted and abandoned the appellee.

---

1. With apologies to James Grady who penned *Six Days of the Condor.*
2. Condore v. Prince George's County, 289 Md. 516, 425 A.2d 1011 (1981).

The appellant answered in due time and also launched his counterattack via a cross bill for divorce *a mensa et thoro* in which he asserted cruelty of treatment and constructive desertion. A "six day war" in open court led to a victory for the appellee. Appellant was denied an *a mensa et thoro* divorce, and appellee was granted alimony of $800 a month, custody of the then two minor children, with $250 per month support per child, and $2,000 toward her counsel fees.

We shall avoid discussion of the maneuvering between the parties during the period November 1977 to April 1978 when the appellee was granted an *a vinculo matrimonii* decree of divorce from the appellant. The reason we have not discussed the interim proceedings is that they add nothing to the case except to underscore the acrimony that permeates the record. From the date of the *a vinculo matrimonii* decree in April 1978 to February 17, 1981, the date of the matter now on appeal before us, there are 143 separate docket entries.[3]

The February 17, 1981, proceeding resulted in a denial of the appellant's petition to cite appellee for contempt. At the same time, the appellee's petition to modify alimony and child support was also denied. Alimony was continued at $1,000 per month and child support remained at $500 per month.[4] Appellant was also directed to pay $800 toward orthodontist treatments to the minor child and $1500 to the appellee as a contribution toward her counsel's fee.

I.

"Common Law Alimony No Longer Exists."

To support that assertion, appellant relies upon *Condore v. Prince George's County, supra,* wherein the Court explained that the earlier requirement that husbands pay

---

3. The total docket entries were 196.

4. Child support and alimony payments had been increased to those amounts by court order on June 5, 1979. There was no appeal from that order.

for their wives' necessaries was no longer viable in the light of the Maryland Equal Rights Amendment, Md. Constitution, Bill of Rights, Article 46. That article provides:

"Equality of rights under the law shall not be abridged or denied because of sex."

Appellant then equates alimony with necessaries and concludes that if the husband is no longer liable for payment for his wife's necessities, he is no longer liable to pay alimony. Chief Judge Murphy, for the Court, explained in *Condore* that the common law of Maryland prior to the adoption of Article 46 of the Declaration of Rights was that a husband was under "a legal duty to supply his wife with necessaries suitable to their station in life. . . ." 289 Md. at 520, 425 A.2d at 1013. The wife, however, was not under a similar obligation to the husband irrespective of her financial ability to meet similar obligations. *Condore v. Prince George's County, supra* at 520, 425 A.2d at 1013; *Ewell v. State,* 207 Md. 288, 114 A.2d 66 (1955). Thus, even if the wife were a millionaire and her husband a pauper, the wife was under no legal duty to pay for the husband's necessaries.

Had the duty of supplying necessaries run from the wife to husband as well as from husband to wife, *Condore* would have been decided differently.

When the voters of Maryland ratified what is now Article 46 of the Declaration of Rights,[5] they implicitly abrogated the common law duty of the husband to provide necessaries to the wife. The presumption of dominance in a marriage by the husband was erased, *Bell v. Bell,* 38 Md. App. 10, 379 A.2d 419 (1977), *cert. denied,* 282 Md. 729 (1978), and the right of the husband to claim alimony was born. *See Minner v. Minner,* 19 Md. App. 154, 310 A.2d 208 (1973).

This Court, in *Minner v. Minner, supra,* found it unnecessary to discuss whether a husband, in a proper case, would be awarded alimony from his wife. We did not reach

---

5. Article 46 of the Declaration of Rights was ratified by the General Election, November 7, 1972. The amendment was passed by the voters of Baltimore City and all save one county. The total vote was overwhelming, 697,107 to 236,007.

the issue because alimony was not claimed by the husband. Had we been confronted squarely by that question, it is patent that Article 46 of the Declaration of Rights would have dictated our holding that the husband, in a proper case, is entitled to alimony.

Article 46, reduced to a simplistic saw, says that "what is sauce for the goose, is sauce for the gander." The Maryland Equal Rights Amendment is a two-edged sword in that it excises discrimination because of sex, but it does not halt with eliminating discrimination only against females.

Lest there be any doubt that Article 46 allowed courts of equity to award alimony to husbands as well as wives, the General Assembly, by Laws 1980, ch. 575, enacted what is now designated in the Code as Article 16, § 1. That section provides in pertinent part: "(a) *Award.* In granting a limited or absolute divorce, annulment, or alimony, *the court may award alimony to either party,* and the existence of a ground for divorce against the party requesting alimony shall not be an automatic bar thereto." (Emphasis supplied.)

The effect of the adoption of Article 46 was not to remove from the law the obligation of a husband, when ordered by a court, to pay alimony to the wife but to add to the law the duty of a wife, when so ordered by a court, to pay alimony to the husband.

Whether we consider the current duty by either spouse to pay alimony to be statutory, as it now is, or a constitutionally modified common law duty, as it was after November 7, 1978, but before the effective date of Laws 1980, ch. 575, is of no consequence to cases decided on or after July 1, 1980. Those cases decided between November 7, 1978, and July 1, 1980, however, are controlled by the constitutionally modified common law. Awards of alimony prior to November 7, 1978, were governed solely by the common law.

"Common law alimony" is no longer awarded, but the enactment of the statute did not nullify prior valid awards, whether they were made before the adoption of Article 46, or after it became part of the Declaration of Rights.

In any event, neither Article 46 nor the 1980 statute diminished the right of an equity court to reconsider and modify alimony, as distinguished from support,[6] whenever changed circumstances are shown to exist. *See Crandall v. Crandall,* 14 Md. App. 476, 287 A.2d 326 (1972).

The trial court did not err in declining to strike the alimony award on the ground that Article 46 had abolished common law alimony.

## II.

Appellant next asks, "Is alimony etched in stone forever?" The appellant's question seems to reflect a lack of confidence in his first issue. Nevertheless, in answering the first issue we have also answered the second; that is, since the court retains jurisdiction to reconsider and modify alimony awards whenever a change in circumstances so warrants, alimony is not "etched in stone." At best, it is written in chalk on slate, subject to being erased by order of the appropriate court.[7]

## III.

Appellant next asserts that there was "insufficient information upon which to base an award of alimony."

We observe that at the conclusion of the hearing on the various petitions, the court did not award alimony. Instead, as we have said, it denied the relief requested in the various petitions and continued the alimony in the amount previously set.

The current amount of alimony was affixed by order of the court on June 5, 1979, "accounting from April 30, 1979." No

---

6. *See* Schroeder v. Schroeder, 234 Md. 462, 200 A.2d 42 (1964); Dickey v. Dickey, 154 Md. 675, 141 A. 387 (1928); and Simpson v. Simpson, 18 Md. App. 626, 631, 308 A.2d 410 (1973).

7. The appellee testified that she considered alimony to be a "pension." It is not.

appeal was taken from that order, although it was appealable. Courts Art. § 12-303 (c) (5); *Pappas v. Pappas,* 287 Md. 455, 413 A.2d 549 (1980).

The appellant's argument is directed toward a change in circumstances that in his view would warrant a reduction in the amount of alimony. Having attacked the award of June 1979 on the ground that a change in circumstances of the parties warranted a reduction in alimony, the appellant carried the burden of proving that allegation by a preponderance of evidence.

We perceive no reason to recount all the evidence, pro and con, as to whether a change in circumstances was such as to merit a reduction in alimony payments. Suffice it to say that the trial judge stated one had "to dig through . . . [appellee's financial statements] and throw 90 percent of them out in order to arrive at what reality is." Appellant seizes upon that statement and from it argues that if a mere 10% of appellee's testimony is believable, then she should receive "10% of the requested amount." What that argument overlooks is that in the trial judge's mind, the believable 10% justified continuing the alimony in the sum set in June 1979. What the chancellor obviously did was vocalize what judges have been doing from time immemorial, sifting, weighing, and measuring evidence while simultaneously assessing credibility of witnesses.

We are unable to hold that the trial judge's finding of "need" for the continuation of alimony, in the amount set in June 1979, was clearly erroneous. Md. Rule 1086. The judge was free to pick and choose from evidence presented. That he did so to the displeasure of the appellant does not mean that the judge was wrong.

IV.

Lastly, the appellant assails the award of $1500 to the appellee as a contribution toward her attorney's fee.

Appellant states:

"There is nothing in the record to substantiate

the $1500 award of counsel fees. Attorney's fees are at the discretion of the Trial Court if there is some evidence to support the award. In the case at bar, there was no testimony as to attorney's fees. The docket entries show that counsel entered the case on March 5, 1980, after the Petitions had been filed and answered. There was no representations, testimony or evidence presented to the Court as to the time spent or the results achieved by counsel to support the award. The arbitrary sum is unsupported and cannot be justified."

The record reveals that after counsel for appellee, *inter alia,* noted his appearance, he filed an answer to the contempt petition, prepared answers to interrogatories, filed a motion for a protective order and a motion *in limine,* participated in a hearing thereon, filed a petition to modify child support and alimony, filed supplemental interrogatories, as well as a request for the production of documents, prepared for appellee supplemental answers to interrogatories, and participated in the hearing before Judge Woods in the circuit court.

Judge Davidson, for this Court in *Foster v. Foster,* 33 Md. App. 73, 77, 364 A.2d 65, 68, *cert. denied,* 278 Md. 722 (1976), said:

"In determining the amount for a reasonable counsel fee, the ordinary factors of labor, skill, time and benefit, as well as the financial resources of the parties, must be taken into account. While time is one of the applicable factors, the record need not contain evidence specifically delineating the number of hours spent by counsel. Because the record itself discloses the nature of the proceedings, it is some evidence of the extent of the attorney's efforts. Given this evidence, the chancellor may rely upon his own knowledge and experience in appraising the value of an attorney's services." (Footnotes omitted.)

Judge Woods, in the instant case, was thoroughly familiar with the case and was in the advantageous position of being able to gauge the time and effort expended on behalf of the appellee by her attorney. There is nothing before us that suggests that Judge Woods acted arbitrarily in exercising his discretion as to the amount of the fee to be awarded to appellee's attorney. We perceive no error.

*Judgments affirmed.*
*Costs to be paid by appellant.*